380 So.2d 1276 (1980)
Raymond Lee GATHRIGHT
v.
STATE of Mississippi.
No. 51782.
Supreme Court of Mississippi.
March 12, 1980.
Eaves & Eaves, G. Jyles Eaves, Louisville, for appellant.
A.F. Summer, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, WALKER and LEE, JJ.
WALKER, Justice, for the Court:
The appellant, Raymond Lee Gathright, was indicted for the crime of murder by a grand jury of Neshoba County, Mississippi. Upon motion by appellant for change of venue, the cause was transferred to the Circuit Court of the Second Judicial District of Panola County, Mississippi. After a full trial, the jury found the appellant guilty of manslaughter and he was sentenced to serve twenty (20) years in the Mississippi State Penitentiary. From that conviction and sentence, appellant prosecutes this appeal. We affirm.
The appellant's primary assignment of error is that the trial court erred in overruling his motion for a directed verdict at the conclusion of the state's case and that the jury verdict was contrary to the overwhelming weight of the evidence.
On the evening of December 16, 1978, K.C. Cotton, the deceased, and John Willie Clay along with the appellant "got together to go drinking." According to the testimony of John Willie Clay, the state's main witness, he and the appellant went to DeKalb, Mississippi, to get some whiskey to *1277 drink. After arriving in DeKalb, they purchased a fifth of whiskey and proceeded to pick up K.C. Cotton, who lived in Winston County, Mississippi. They were riding in the appellant's truck and appellant was driving. After they picked up Cotton at his home, they proceeded on to Louisville where they stopped at a cafe and had some drinks. From there, they went to Philadelphia, Mississippi. While in Philadelphia, they rode around and consumed more whiskey. Around midnight they started back home, but before arriving there, they stopped on the side of a dirt road.
The district attorney asked the witness (Clay) the following questions:
Q. Why did you stop?
A. Well, when I knowed anything, they was getting out of the truck.
Q. What, if anything, was said about the reason they were getting out?
A. I don't know.
Q. What did Raymond Gathright say, if anything?
A. Say, if anything?
Q. What did he say?
A. Oh, I heard him say, "I will show you what I will do."
Gathright went around to the back of the truck and Cotton met him at the tailgate. Gathright hit Cotton across the head. Clay testified that he did not know what Gathright hit Cotton with or how long the object was. Clay further testified that Gathright poured something on Cotton and set fire to him. On cross-examination, Clay testified that at the time of the incident he was full of alcohol and was drunk. He stated that he had been passed out asleep and drunk, never hearing any argument between Gathright and Cotton. However, Clay stated that when the truck stopped on the road, he woke up, witnessed the incident by looking out the back window of the truck.
Following Clay's testimony, Dr. Rodrigo Galvez, a pathologist, testified that he examined the body of K.C. Cotton, a young Indian male, and found a laceration two inches long on the left side of the head and a swollen area in the back of the head on the left side. After opening the head on the left side, he found clotted blood, which, in his opinion, was the direct cause of the man's death. The cause of the blood clot was the direct result of at least two blows on the left side of the head. The body also showed first and second degree burns.
After the state rested, the attorney for the defendant made a motion for a directed verdict in favor of defendant for failure of the state to make out a prima facie case of murder. The motion was overruled and the defendant then testified in his own behalf. The appellant's testimony was essentially the same as John Willie Clay's, until that point when the three arrived in Philadelphia, Mississippi. The appellant's testimony was that they parked in a friend's driveway and drank. Cotton (the deceased) and Clay started arguing over some money. Clay was trying to find out if Cotton had any more money left on him. They then left Philadelphia and went toward Preston, whereupon Clay asked appellant to pull off the side of the dirt road. After appellant stopped, both Clay and Cotton got out of the truck. Appellant testified that Clay went around to the back of the truck and got a pulpwood stick and then came back and asked Cotton where his money was. Cotton replied that, "he didn't have none," and that is when Clay started hitting Cotton. Appellant also stated that Cotton and Clay were drunk but that he (appellant) was not. The appellant then testified that after Clay hit the deceased with the pulpwood stick, Clay then poured gas on Cotton. Asked if he tried to put the fire out or save Cotton, the appellant replied, "I went to the back of the truck and got my father's raincoat and put it over his body, tried to put it over his body, but he [Clay] didn't want me to do that ... He said, `Let the son-of-a-bitch die.'" On cross-examination, the appellant testified that Clay, after pouring gas on Cotton, asked him for a match, and he handed him some matches; however, on redirect examination, appellant testified that he did not know what Clay was going to do with the matches when he asked for them, and that he did not know whether Clay was going to smoke or what.
*1278 The appellant strongly contends that the trial court erred in overruling his motion for a new trial because the state's only witness linking appellant with the murder was John Willie Clay, who was intoxicated at the time of the alleged murder. Appellant submits that justice and fairness demand this case be reversed.
This Court has in numerous cases, too many to mention, said that when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the state's witnesses and the appellant's witnesses, including the appellant himself. We have repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the state or on behalf of the accused. In other words, the credibility of witnesses is not for the reviewing court. Davis v. State, 320 So.2d 789 (Miss. 1975); Wilson v. State, 264 So.2d 828 (Miss. 1972); McLelland v. State, 204 So.2d 158 (Miss. 1967).
The testimony presented a typical case for determination by the jury and only the jury could resolve the conflicting facts. Since the testimony was credible and the proof offered by the state was not against the overwhelming weight of the evidence, we are not inclined to disturb the judgment of the jury and the trial court.
We have considered appellant's remaining assignment of error and find it to be without merit.
For the above reasons, the judgment of the lower court should be affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE, BOWLING and COFER, JJ., concur.