# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-KA-00251-SCT

*JAMES EWING*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/22/2010 |
| TRIAL JUDGE: | HON. ROBERT WILLIAM ELLIOTT |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: BENJAMIN ALLEN SUBER |
| | LESLIE LEE |
| | KEVIN L. HOWE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/14/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     James Ewing was convicted in Calhoun County Circuit Court for the sale of a controlled substance, i.e., hydrocodone. Judge Robert W. Elliott sentenced Ewing to fifteen years with five years suspended and five years on post-release supervision. On appeal, Ewing argues that the verdict was against the overwhelming weight of the evidence. Because we find the verdict was not contrary to the overwhelming weight of the evidence, we affirm.

**FACTS AND PROCEEDINGS**

¶2. Tina West worked as a confidential informant on behalf of the Calhoun County Sheriff's Office. On August 30, 2007, Deputies Dean Poyner and Wayne Plunk searched West and her vehicle. The deputies then placed concealed audio and video equipment on West, and gave her twenty dollars to buy hydrocodone. West met her friend Debra and Ewing's brother, Joe,[1] at Debra's house. West indicated to the deputies that Debra would sell her the pills, but they had to wait for Ewing to come unlock the door to the house. Ewing was Debra's boyfriend at the time in question.

¶3. Once Ewing arrived at the house, he consulted with his brother and Debra about the number of pills to sell West. West then followed Ewing inside the home, where she purchased six pills of hydrocodone from Ewing. Ewing was indicted under Mississippi Code Section 41-29-139(a) for the transfer and sale of a controlled substance.[2]

¶4. At trial, West testified for the State and identified Ewing during her direct testimony as the person from whom she bought the hydrocodone pills. West admitted that she gave the twenty dollars to Ewing in exchange for the pills. She also confirmed that the DVD, recorded on August 30, 2007, accurately depicted the controlled buy. On cross-examination,

---

[1]Joe passed away after this incident, but prior to trial.

[2]Mississippi Code Section 41-29-139(a)(1) (Rev. 2009) states:

(a) Except as authorized by this article, it is unlawful for any person knowingly or intentionally;

(1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance . . . .

2

Ewing's attorney pressed West about to whom she had given the twenty dollars. Again, West said she had given the money to Ewing, and later recalled, "I didn't give money to Debra. I didn't give the money to Debra." But after repeated questions from Ewing's attorney, West's final response to the question "didn't you give that money you were flashing around there on the camera to Debra and Joe out there in the car before you ever went into the house?" was "I don't think I did. I don't know."

¶5.    The State also called Deputy Dean Poyner. Deputy Poyner testified that he had monitored the audio recording of the controlled buy from his car, and noted that he had received six pills from West after the controlled buy had ended. Deputy Poyner further testified that the Mississippi Crime Laboratory had tested the pills and had concluded that they were hydrocodone. The pills were admitted into evidence, as was the DVD of the controlled buy. The State played the DVD for the jury.

¶6.    Ewing testified, and denied selling the pills to West. Ewing claimed that he had gone to the house on the day in question only to unlock the door for Debra and Joe. Ewing testified that he was acting at the direction of his brother, Joe, and that the pills were also Joe's. Ewing further stated that he did not receive the twenty dollars from West, and that he thought she gave the money to Debra and Joe before she entered the house.

¶7.    The DVD showed the following: (1) West's arrival at Debra's house; (2) West talking with Debra and Joe about buying the pills; (3) West, Debra, and Joe waiting on Ewing to arrive and unlock the door; (4) West and Ewing talking about how many pills she could buy for twenty dollars; (5) Ewing and Joe discussing how many pills to sell West; (6) West following Ewing into the home; (7) Ewing and West exchanging something in the home

3

while discussing how many pills Ewing had given West; and (8) West leaving the home, but promising to come back and buy the rest of the pills when she came up with more money. The DVD did not show the actual pills and money change hands from Ewing to West, although movement of their arms could be seen while West joked about how many pills Ewing had given her.

¶8.    The jury convicted Ewing for the sale and transfer of hydrocodone.  The trial court sentenced Ewing to fifteen years with five years suspended and five years post-release supervision.   Ewing now appeals.

## DISCUSSION

¶9.    The sole issue Ewing raises on appeal is that the verdict was against the overwhelming weight of the evidence.   When reviewing a claim that a conviction is against the overwhelming weight of the evidence, this Court must accept the evidence that supports the verdict as true and "will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial."[3]   A new trial is not proper unless "the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice."[4]   Further, "[t]here is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court."[5]

---

[3] *Valmain v. State*, 5 So. 3d 1079, 1086 (Miss. 2009) (citing *Todd v. State*, 806 So. 2d 1086, 1090 (Miss. 2001)).

[4] *Id*.

[5] *Id*. (citing *King v. State* 857 So. 2d 702, 731 (Miss. 2003)).

¶10.    Mississippi Code Section 41-29-139(a)(1) states, in relevant part:

> (a) Except as authorized by this article, it is unlawful for any person knowingly or intentionally;
> (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance . . . .

Miss. Code Ann. § 41-29-139 (Rev. 2009). Ewing asserts that he did not knowingly sell or transfer hydrocodone to West. Ewing maintains that he went to the house only to unlock the door for Debra and Joe. He further argues that West's testimony at trial was not credible.

¶11.    The evidence at trial included the testimony of West, the confidential informant. West testified on direct that: she had called her friend Debra and arranged to buy hydrocodone; she had bought six pills of hydrocodone from Ewing and not Debra; she had given the twenty dollars to Ewing in exchange for the hydrocodone; and she identified Ewing as the person with whom she made the exchange. West also confirmed the accuracy and authenticity of the DVD in which she participated.

¶12.    Additionally, the State produced Deputy Poyner, who testified that prior to the controlled buy, he had searched West and her vehicle before he had placed concealed audio and video equipment on West. Deputy Poyner stated that he had listened to the audio recording as the transaction between West and Ewing took place. Deputy Poyner also testified that he had received six pills of hydrocodone from West after the exchange had ended, and that he had had the pills tested by the Mississippi Crime Laboratory to make sure the pills actually were hydrocodone.

¶13.    Ewing had an opportunity to contest the evidence presented by the State and testified that he had gone to the house only to unlock the door for Debra and Joe. Ewing further

testified that he did not accept the twenty dollars from West. He also stated that the pills belonged to Joe, and that he had acted at Joe's direction. Ewing's testimony directly contradicted the testimony of West. But this conflict merely presented an issue for the jury to resolve.[6] In light of the verdict, it is clear that the jury, acting within its purview, chose to discredit Ewing's testimony.

¶14. Finally, the jury viewed the DVD and made its own conclusions. The DVD showed West repeatedly asking Debra, Joe, and Ewing about the pills and how many she could buy for twenty dollars. It is clear from the DVD that West had a twenty-dollar bill in her hand when she approached Ewing's car and asked about buying the pills. And despite the fact that neither the pills nor the money can be seen on the DVD when the exchange took place, based on the outcome of the trial, it is apparent the jury chose to believe that West handed Ewing twenty dollars and received six pills of hydrocodone in exchange.

¶15. Because the "jury is the sole judge of the weight of the evidence and the credibility of the witnesses,"[7] they may "accept the testimony of some witnesses and reject that of others."[8] The same goes for any evidence presented by the State and the accused.[9] Here, the jury gave more weight to the State's evidence and found the State's witnesses to be more credible. This

---

[6]*See* **Gathright v. State**, 380 So. 2d 1276, 1278 (Miss. 1980) ("[W]hen evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the State's witnesses and the appellant's witnesses, including the appellant himself.")

[7]**Mohr v. State**, 584 So. 2d 426, 431 (Miss. 1991).

[8]**Gathright v. State**, 380 So. 2d 1276, 1278 (Miss. 1980).

[9]*Id*. (The Court stated that "[t]hey [the jury] may accept in part and reject in part the evidence on behalf of the State or on behalf of the accused.")

determination must not be disturbed on appeal, as the "credibility of witnesses is not for the reviewing court."[10]

¶16.    After reviewing the statute under which Ewing was convicted and accepting as true all the evidence that supports the verdict, we cannot say that allowing the verdict to stand would sanction unconscionable injustice.  Thus, the circuit court did not err in denying Ewing's motion for a new trial.

## CONCLUSION

¶17.    For the reasons stated, we affirm Ewing's conviction and sentence.

¶18.    **CONVICTION OF THE SALE OF A CONTROLLED SUBSTANCE (HYDROCODONE) AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE (5) YEARS SUSPENDED, WITH CONDITIONS, AFFIRMED.  APPELLANT IS PLACED ON POST RELEASE SUPERVISION FOR A PERIOD OF FIVE (5) YEARS.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR.  GRAVES, P.J., NOT PARTICIPATING.**

---

[10] *Id*.