# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-00643-SCT

*DAVID JAVARIOUS JAMISON RENFRO a/k/a*
*DAVID J. J. RENFRO a/k/a DAVID RENFRO a/k/a*
*DAVID JAVARIOUS RENFRO a/k/a DAVID*
*JAMES RENFROW a/k/a JAMIE RENFRO*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/02/2012 |
| TRIAL JUDGE: | HON. MICHAEL M. TAYLOR |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/11/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     Appellant David Javarious Jamison "Jamie" Renfro was convicted in the Circuit Court of Lincoln County of armed robbery under Mississippi Code Section 97-3-79. Andra Roundtree testified that Renfro entered Roundtree's trailer home on March 21, 2011, and robbed Roundtree at gunpoint. A second eyewitness corroborated most of Roundtree's testimony. The jury returned a unanimous guilty verdict, and Renfro was sentenced to twenty

years in prison, with five years suspended. On appeal, Renfro argues that the verdict was contrary to the overwhelming weight of the evidence, and therefore, he is entitled to a new trial. Because we find that it is well-supported by the weight of the evidence, we uphold the jury's verdict.

## FACTS

¶2.     Only five witnesses testified at trial, two of which, Andra Roundtree and Jeremy McCullom, were present during the robbery. A third eyewitness, Tonia Daniels, was unable to testify at trial. Renfro chose not to testify.

¶3.     At approximately 11:00 p.m. on March 21, 2011, Andra Roundtree and Jeremy McCollum were inside Roundtree's trailer home located at 401 Industrial Park in Brookhaven, Mississippi. McCollum testified he was there to buy illegal liquor from a man he identified at trial as Roundtree but knew only by the name of "Mon" at the time. Roundtree testified that a man known to him only as "Jay" was present at the time. Roundtree testified that Renfro entered the house through the front door and was "pulling a hood down over his head trying to hide his face, and he was holding a gun," but Roundtree could still see Renfro's face "very well." McCollum also testified that Renfro came into the home and told Roundtree to get down, but that Renfro had only some object in his hand. When Renfro entered, McCollum placed his hands up, stood against the wall, and remained quiet.

¶4.     Renfro told Roundtree to "give it up," but at first, Roundtree thought he was just playing. Renfro walked through the living room to the kitchen where Roundtree was sitting, placed a gun to the back of Roundtree's head, and said "Bitch, I'm not playing." A fourth

2

person, Tonia Daniels, then entered the home. Renfro told her to get on the floor, but when Daniels told him she was phsyically unable to get on the floor, he told her to sit on the couch. At this point, McCollum ran out of the house.

¶5.    Renfro continued to demand that Roundtree "give it up," which Roundtree understood to mean he wanted money.  Eventually, Renfro allowed Roundtree to stand up and walk into the living room, where Renfro stood, holding the gun in front of Roundtree. Renfro finally asked, "Where is the money?" He then grabbed Roundtree's backpack and .380 caliber handgun that were lying on the couch before backing out the front door and leaving the house. Roundtree testified that the gun Renfro took was the only gun Roundtree owned.

¶6.    A neighbor, who did not testify, called the police at approximately 11:01 p.m., and Officer Fred Perkins arrived at the home within ten minutes. He testified that he met Roundtree standing outside the home appearing erratic, nervous, and flustered, and that he was talking fast, trying to explain what had happened. Renfro was no longer at the scene, and there were no signs of any struggle or disarray related to the robbery.  Investigators took no pictures or fingerprints and gathered no physical evidence, and neither Renfro's gun, the backpack, nor Roundtree's gun were ever recovered. Officer Perkins testified that Roundtree "made an identification" to him that night and that Daniels was the only other person at the scene.

¶7.    The next day, Roundtree filled out a statement naming Renfro as the perpetrator. The statement was admitted at trial and read:

David James Renfrow (Aka - Jamie) entered my house last night pointing a gun and asking where was the money. He got behind me while [I] was sitting down and put a gun to the back of my head and told me to give it up. My friend Tonya come in at that time and he told her to get on the floor. Neither of us got on the floor he got nervous grabbed my gun and backed out of the house.

Although Roundtree testified that he knew Renfro only as "Jamie," he clarified under cross-examination that he had learned Renfro's full name from Renfro's father. Officer Perkins testified that Daniels had told Roundtree that Renfro's first name was David. Roundtree also testified that this statement was "a rushed statement" given to the police "in less than ten minutes" and that some details, like Renfro pulling a hood over his head, were left out. His statement did not mention Jay being in the house because he "didn't think this statement would be the case." He expected the police to ask him more questions about the incident, but no one did until he was asked to testify at the trial.

¶8.    Andra Roundtree  was the only witness who testified to Renfro possessing a gun and stealing his property. Roundtree testified that he had known Renfro for about four years at the time of the trial, and that Renfro used to live next door to him in Renfro's aunt's trailer. At the time of the robbery, Roundtree was the lot manager for the trailer park, and he often kept rent money in his house. Renfro may have known this, because Roundtree had told him that he collected the rent when Renfro had asked him for a job at the trailer park. Roundtree also testified that he suffers from paranoid schizophrenia and another mental diagnosis. At the time of the robbery, he had been seeing a therapist twice a month but had not been

4

prescribed any medications for his conditions. He has since been placed on medication for his paranoid schizophrenia.

¶9.     Jeremy McCollum was questioned about his statements to a police investigator, Truett Simmons, to whom McCollum spoke a week before the trial. McCollum testified that he told Simmons that Renfro "came in with something," but when Simmons asked McCollum if it was a gun, he told Simmons he did not know what it was. McCollum testified that he never saw a gun, and that he was "too scared to try to figure out" what the object in Renfro's hand was. He maintained that he did not tell the investigator that Renfro had a gun, and that he never did see a gun while he was in the home.

¶10.    The jury was not informed that, the day after the robbery, Roundtree allegedly shot and injured a person standing in close vicinity to Renfro as Roundtree was returning home from filing his statement at the police station. Roundtree was indicted for aggravated assault in relation to this incident. Because he invoked his Fifth Amendment right against self-incrimination, no testimony was presented about this event or the indictment.

¶11.    The jury returned a unanimous guilty verdict but did not recommend life imprisonment. The trial court denied Renfro's motion for a new trial and sentenced him to twenty years in prison with five years suspended. Renfro's only issue on appeal is whether the trial court abused its discretion in denying his motion for a new trial because the verdict was contrary to the overwhelming weight of the evidence.

**DISCUSSION**

5

¶12. Renfro argues generally that the testimony presented at trial was "at best, unreliable, inconclusive and unsupportive of the conviction to the extent that a miscarriage of justice has occurred." Specifically, he argues that police conducted little to no investigation and that Roundtree gave incomplete or misleading statements to the police. He also points to the discrepancy between Roundtree's and McCollum's testimony, where McCollum testified that he did not see a gun. Finally, he notes Roundtree's paraniod schizophrenia and argues that the jury was unable fully to assess Roundtree's credibility because it did not hear evidence that Roundtree was under indictment for shooting a gun at Renfro the day after the robbery. The State argues that there was substantial, credible evidence allowing the jury to convict Renfro.

¶13. A trial court's denial of a motion for a new trial will be overturned only if the trial court abused its discretion by denying the motion. *Sheffield v. State*, 749 So. 2d 123, 127 (Miss. 1999). We have stated that a new trial should be granted only when the verdict is "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005). "[O]nly in exceptional cases in which the evidence preponderates heavily against the verdict" should a court exercise its discretion to grant a new trial. *Id.* (quoting *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000)). Moreover, we must weigh the evidence in a light most favorable to the verdict. *Bush*, 895 So. 2d at 844. Even if we find that the verdict is against the overwhelming weight of the evidence, Renfro's remedy is a new trial and not acquittal. *Id.*

6

¶14.    We have overturned verdicts in cases in which we found "the first jury's determination of guilt to be based on extremely weak or tenuous evidence[,] even where that evidence is sufficient to withstand a motion for a directed verdict." ***Dilworth v. State***, 909 So. 2d 731, 737 (Miss. 2005) (quoting ***Lambert v. State***, 462 So. 2d 308, 322 (Miss. 1984) (Lee, J., dissenting)). We also have granted new trials in cases where the evidence was "so 'extremely doubtful that it [was] repulsive to the reasoning of the ordinary mind.'" ***Dilworth***, 909 So. 2d at 738 (quoting ***Thomas v. State***, 129 Miss. 332, 92 So. 225, 226 (1922)). However, weighing the credibility of witnesses is the exclusive province of the jury. ***Glidden v. State***, 74 So. 3d 342, 349 (Miss. 2011).  The "jury is the sole judge of the weight of the evidence and the credibility of the witnesses," and jurors may choose to believe one witness over another. ***Ewing v. State***, 45 So. 3d 652, 655 (Miss. 2010) (quoting ***Mohr v. State***, 584 So. 2d 426, 431 (Miss. 1991)). Moreover, the jury is "permitted to draw such reasonable inferences from the evidence" as it deems justified by the light of its own experience. ***Glidden***, 74 So. 3d at 349.

¶15.    Renfro was convicted of armed robbery under Mississippi Code Section 97-3-79, which required the State to prove that Renfro "feloniously [took] or attempt[ed] to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon." Miss. Code Ann. § 97-3-79 (Rev. 2006).  Therefore, the jury had to decide two fact questions: (1) did Renfro take or attempt to take personal property

7

from Roundtree, and (2) did Renfro place Roundtree in fear of immediate injury to his person by exhibiting a deadly weapon?

> **A. Was the jury's finding that Renfro took or attempted to take Roundtree's personal property contrary to the overwhelming weight of the evidence?**

¶16. Ultimately, the State produced only one witness, Andra Roundtree, who was able to testify that Renfro stole the gun and the backpack from the presence of Roundtree. While neither the gun nor the backpack was ever recovered, no witness testified that Renfro did not steal these items. Although McCollum left the house before Renfro grabbed these items and left, McCollum was able to testify to Renfro's presence in the house and his demands that Roundtree and Daniels get on the floor. While McCollum did not actually testify that he heard Renfro demand money or tell Roundtree to "give it up," a reasonable inference from Renfro's demand that Roundtree and Daniels get on the floor is that Renfro was attempting to rob them.

¶17. The jury also was entitled to believe Renfro's testimony that Roundtree stole his .380 caliber pistol and backpack. Roundtree's testimony that Renfro demanded money is consistent with his testimony that he was the rent collector for the trailer park at the time of the robbery, and that Renfro knew he kept large amounts of money in his trailer. The jury was entitled to draw a reasonable inference that Renfro had a motive to rob Roundtree and that he was attempting to take money from Roundtree.

¶18. The jury was informed that Roundtree had been diagnosed as a paranoid schizophrenic, and it was entitled to determine that Roundtree was still a truthful witness in

8

spite of this fact. Viewing the evidence in a light most favorable to the verdict, the overwhelming weight of the evidence does not contradict the jury's finding that Renfro stole Roundtree's gun and backpack.

B. **Was the jury's finding that Renfro placed Roundtree in fear of immediate injury to his person by exhibiting a deadly weapon contrary to the overwhelming weight of the evidence?**

¶19. The State presented uncontradicted testimony from both Roundtree and McCollum that Renfro entered the home and demanded that Roundtree get on the floor. While Roundtree did not state at trial that Renfro told him to get on the floor, he did indicate this in his written statement to the police. Roundtree further testified that Renfro placed a gun to the back of his head and later stood in front of Roundtree and pointed a gun where Roundtree could see it.

¶20. While McCollum testified that he did not see a gun, he did testify that Renfro entered the home carrying an object and that he made demands that frightened McCollum to the point where he raised his hands and eventually fled the trailer. The jury was entitled to draw an inference that whatever object Renfro carried, it was sufficient to place Roundtree in fear of immediate injury. The jury also was entitled to believe Roundtree's testimony that it was, in fact, a gun that Renfro held to his head. Officer Perkins testified that Roundtree was nervous, erratic, flustered, and talking fast in a high-pitched voice when Perkins arrived at Roundtree's trailer home less than ten minutes after the robbery. The jury was entitled to infer that this state of mind was consistent with that of a person who had just had a gun placed to his head.

9

¶21. Viewing all of this evidence in the light most favorable to the verdict, the jury's finding that Renfro used a gun to place Roundtree in fear of imminent bodily injury was not against the overwhelming weight of the evidence.

¶22. We previously have stated that "[t]he testimony of a single uncorroborated witness is sufficient to sustain a conviction," and this Court will allow a verdict to stand upon such evidence "even though there may be more than one person testifying to the contrary." *Williams v. State*, 512 So. 2d 666, 670 (Miss. 1987). While the State relied heavily on Roundtree's testimony, there is no evidence directly contradicting Roundtree's eyewitness account. Everything that Roundtree testified to or reported to the police regarding the time while McCollum was present was corroborated by McCollum's testimony, with the exception of McCollum's uncertainty as to whether Renfro had a gun. Even that is not enough to require a new trial, as "inconsistencies in witnesses' testimony do not require the jury to reject the entire testimony" of a witness. *Duncan v. State*, 939 So. 2d 772, 782 (Miss. 2006). The jury was entitled to believe, in spite of McCollum's uncertain testimony, that Renfro carried a gun and used it to place Roundtree in fear of imminent injury, and that he stole Roundtree's personal property.

### C.    Roundtree's aggravated assault indictment

¶23. Renfro also argues that the jury had incomplete information because Roundtree's Fifth Amendment right against self-incrimination protected him from cross-examination regarding his aggravated-assault indictment. Renfro argues this evidence would have impeached Roundtree's testimony that Renfro stole the only gun Roundtree owned. He also argues this

evidence shows bias and a motive to lie and generally damages Roundtree's credibility. For instance, if Renfro had a felony conviction, Roundtree might use that conviction to discredit Renfro's testimony against him in his aggravated-assault case. However, Renfro does not assign any error to the trial court for excluding this evidence, acknowledging in his brief that his own "Sixth Amendment right to cross-examine Roundtree about the shooting incident had to yield  to Roundtree's invocation of his Fifth Amendment right not to incriminate himself." Renfro is correct that this testimony was rightly excluded. *United States v. Hernandez*, 962 F. 2d 1152, 1161 (5th Cir. 1992) (holding that "a defendant's Sixth Amendment right of compulsory process to obtain witnesses in his favor must yield to a witness's Fifth Amendment privilege against self-incrimination.")).

¶24.    While it is possible that the jury might have disbelieved Roundtree had it heard this evidence, this evidence in and of itself does not preponderate so heavily against the verdict that Renfro is entitled to a new trial. While this information raises questions as to Roundtree's character and credibility, it does not contradict his testimony. The State points out in its brief that, rather than exonerating Renfro, this evidence could have shown that Roundtree was angry at Renfro for robbing him at gunpoint. Therefore, even if this evidence had been before the jury, there still would be no basis for a new trial, because we must view all evidence in a light most favorable to the verdict. Moreover, Renfro cites no authority holding that excluded evidence necessitates a new trial where the trial court committed no error in excluding that evidence. This argument is without merit.

**CONCLUSION**

11

¶25. The verdict is not contrary to the overwhelming weight of the evidence. Rather, there is no evidence tending to exonerate Renfro. The evidence used to convict Renfro was neither extremely weak, tenuous, nor doubtful, and the jury's verdict is not an unconscionable injustice. The denial of Renfro's motion for new trial was well within the circuit court's discretion. The verdict and sentence are affirmed.

¶26. **CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE (5) YEARS SUSPENDED, AND FIFTEEN (15) YEARS TO SERVE, AFFIRMED. APPELLANT SHALL PAY COURT COSTS OF $411.00, A FINE OF $3,000.00 AND FULL RESTITUTION.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.**