# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-00467-SCT

*JESSICA L. WALKER a/k/a JESSICA LASHUNDA WALKER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/14/2023 |
| TRIAL JUDGE: | HON. CALEB ELIAS MAY |
| TRIAL COURT ATTORNEYS: | STEVEN SIMEON KILGORE |
| | CHRISTOPHER MORGAN POSEY |
| | BRITTANY WHITE BROWN |
| | WALTON WADE WHITE |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 07/18/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.    Jessica Walker was convicted by a jury of knowingly possessing methamphetamine pursuant to Mississippi Code Section 41-29-139(c)(1)(B) (Rev. 2018) with a firearm enhancement in the Newton County Circuit Court. She was sentenced to six years' imprisonment with three years suspended and three years to serve.

¶2.    Walker timely appealed her conviction and raises the following issues for the Court's review: (1) whether the evidence was sufficient to prove constructive possession or whether

the verdict was contrary to the weight of the evidence; and (2) whether the trial court erred by limiting defense theory evidence. Because the State failed to present sufficient, competent evidence connecting Walker to the methamphetamine, we reverse and render.

## BACKGROUND

### 1. Factual History

¶3.	On October 21, 2020, Jessica Walker and her then-boyfriend, Richard Buckley, were on their way home when they approached a safety check-point roadblock administered by the Newton County Sheriff's Office. While Buckley was initially driving Walker's vehicle, the two switched seats as they approached the roadblock because Buckley did not have a driver's license. Deputy Donna Chapman approached Walker's vehicle, took her driver's license, and then asked Walker to exit the vehicle when she smelled unburned marijuana. Deputy Chapman asked Walker if there was anything of concern in the vehicle, and Walker responded that she had a handgun under the driver's seat. Deputy Chapman secured the weapon as well as a "brown paper balled up in the driver's seat," which she believed to be a small amount of marijuana. Deputy Chapman proceeded to search the vehicle and found "a clear bag containing a white, crystallized substance" between the driver's seat and center console.

¶4.	Walker was arrested, and Buckley, who had also exited the vehicle and was being supervised by another officer, Deputy Fred Hardy, was released. Buckley retreated from the scene on foot, leaving Walker's car to be towed. Buckley was not investigated or charged with a crime. While Deputy Chapman suspected that the substance wrapped in brown paper

2

was marijuana, it was never tested. The substance found between the driver's seat and center console, however, was tested and was identified as 0.245 grams of methamphetamine.

## 2.    Procedural History

¶5.    Walker was indicted on one count of possession of methamphetamine with a firearm enhancement pursuant to Mississippi Code Sections 41-29-139(c)(1)(B) and -152 (Rev. 2018), respectively. Walker pled not guilty. While she readily admitted to possessing the firearm, as well as her occasional recreational use of marijuana, Walker vehemently maintained that the methamphetamine was Buckley's and that she was unaware that he had stowed it in her vehicle. Indeed, Walker testified that she had never taken methamphetamine or dealt with it in any way.

¶6.    In support of her defense that Buckley was the sole possessor of the methamphetamine, Walker sought to elicit on cross-examination evidence of his prior arrests and convictions for drug-related offenses from Investigator Benjamin Kelly, who evidently had some knowledge of Buckley through his work as the narcotics investigator with the Newton County Sheriff's Department. Anticipating that line of questioning, the State made an ore tenus motion in limine in which it sought to preclude Walker's counsel from asking Investigator Kelly if Buckley had a criminal history, if he had ever personally arrested Buckley, and if Buckley was a convicted felon. The circuit judge agreed, concluding that such evidence was irrelevant and inadmissible under Mississippi Rule of Evidence 404(b). Walker's defense counsel proffered the following line of questioning:

> Q.    Was there anybody else in the car?

A.   Yes, sir.

Q.   Who was the other person in the car?

A.   Richard Buckley.

Q.   Richard Buckley, and you know that because of the report that Ms. Donna — Deputy Chapman did?

A.   Yes, sir.

Q.   Did you interview him?

A.   No, sir.

Q.   Did you search him in any way or interrogate him or follow him or in some how or another involve him in this crime on October 21st?

A.   No, sir.

Q.   So you didn't do anything related to Mr. Buckley?

A.   No, sir.

Q.   Do you know who he is?

A.   I do.

Q.   Well, if you know who he is and you know he was in the car, why didn't you investigate him?

A.   No arrest was made on him that night.

Q.   But you would agree you're the narcotics officer and this is a person in the car with narcotics?

A.   Yes, sir.

Q.   And so you could not find him?

A.   I didn't look for him.

Q. Do you know him?

A. I do.

Q. Do you know where he lives at?

A. I've known where he stayed at points but as far as like can I go directly to where he's staying now or anything, no, sir.

Q. And you have the resources, knowing him through the department — through the sheriff's department, you could use those to find him; correct?

A. I could.

¶7. The circuit judge allowed the questions proffered. The jury returned a guilty verdict, and Walker was sentenced to six years' imprisonment with three years suspended and three years to serve. The circuit judge denied Walker's motion for a new trial. Thereafter, Walker appealed her conviction, petitioning the Court to consider the following issues: (1) whether the evidence was sufficient to prove constructive possession or whether the verdict was contrary to the weight of the evidence; and (2) whether the trial court erred by limiting defense theory evidence.

## STANDARD OF REVIEW

¶8. The circuit court's exclusion of evidence is reviewed for abuse of discretion. *Carothers v. State*, 152 So. 3d 277, 281 (¶ 14) (Miss. 2014) (citing *Osborne v. State*, 54 So. 3d 841, 845 (Miss. 2011)). While the trial court is afforded generous discretion "as to the relevancy and admissibility of evidence[,]" the Court should reverse a trial court's ruling when "the judge abuses his discretion so as to be prejudicial to the accused[.]" *Green v.*

5

***State***, 89 So. 3d 543, 549 (¶ 15) (Miss. 2012) (emphasis omitted) (quoting ***Gore v. State***, 37 So. 3d 1178, 1183 (Miss. 2010)).

¶9.     "When reviewing a challenge for sufficiency of the evidence, this Court must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ***Eubanks v. State***, 341 So. 3d 896, 909-10 (¶ 41) (Miss. 2022) (internal quotation marks omitted) (quoting ***Naylor v. State***, 248 So. 3d 793, 796 (Miss. 2018)).

¶10.    To determine whether the verdict is against the weight of the evidence, the Court "accept[s] as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." ***Baker v. State***, 802 So. 2d 77, 81 (¶ 14) (Miss. 2001) (quoting ***Dudley v. State***, 719 So. 2d 180, 182 (¶ 20) (Miss 1998), *disagreed with by* ***Dilworth v. State***, 909 So. 2d 731 (Miss. 2005)).  And "[o]nly in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." ***Id.***

## DISCUSSION

I.      **Whether the circuit judge abused his discretion by limiting Walker's theory of defense.**

¶11.    The State sought to preclude evidence of Richard Buckley's criminal history on the basis that it was inadmissible under Mississippi Rule of Evidence 404(b).  The circuit judge agreed, and he also found such evidence irrelevant.  On appeal, Walker contends that the

circuit court erred by ruling the evidence was inadmissible because prior bad act evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, [or] knowledge[.]" Miss. R. Evid. 404(b)(2). Walker also argues that the evidence was relevant and supported the inference that it was Buckley, not she, who constructively possessed the methamphetamine. Thus, Walker asserts that she was unfairly denied the opportunity to present her full theory of defense to the jury—that Buckley alone had knowledge and constructive possession of the methamphetamine seized from her vehicle.

¶12. Indeed, we have long held that "[a] criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant's defense where there is testimony to support the theory." *Terry v. State*, 718 So. 2d 1115, 1121 (¶ 28) (Miss. 1998) (citing *Keys v. State*, 635 So. 2d 845, 848-49 (Miss. 1994)). However, "[w]hen testimony is not allowed at trial, a record of the proffered testimony must be made in order to preserve the point for appeal." *Jackson v. State*, 245 So. 3d 433, 441 (¶ 45) (Miss. 2018) (internal quotation marks omitted) (quoting *Green v. State*, 89 So. 3d 543, 554 (¶ 28) (Miss. 2012)). Walker's counsel failed to proffer questions of Buckley's criminal history. Without the above-quoted questioning, the Court has no way to know what evidence would have been presented regarding the defendant's passenger. Therefore, we hold that Walker failed to preserve the issue for appeal.

**II. Whether the evidence was sufficient to prove constructive possession or whether the evidence contrary to the weight of the evidence.**

7

¶13.    Jessica Walker was convicted of violating Mississippi Code Section 41-29-139(c), which states in pertinent part:

> [I]t is unlawful for any person knowingly or intentionally to possess any controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this article.

Miss. Code Ann. § 41-29-139(c) (Rev. 2018).

¶14.    In order to convict a defendant of possession of a controlled substance, "there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Sills v. State*, 359 So. 3d 603, 610 (¶ 34) (Miss. 2023) (internal quotation marks omitted) (quoting *Glidden v. State*, 74 So. 3d 342, 345 (¶ 12) (Miss. 2011)). Possession can be actual or constructive. Constructive possession exists where the contraband was not found in the defendant's actual physical possession but was "subject to [the defendant's] dominion or control." *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971).

¶15.    When the substance is not found on the defendant's person, the State has to prove constructive possession—*i.e.*, that the defendant "was aware of the [drug] and intentionally. . . in possession of it." *Sills*, 359 So. 3d at 610 (¶ 35) (internal quotation marks omitted (quoting *Glidden*, 74 So. 3d at 345 (¶ 20)). Notably, the Court has held that "[t]he defendant's proximity to the drugs is a factor in establishing constructive possession, *but it is not determinative*." *Knight v. State*, 72 So. 3d 1056, 1063 (¶ 26) (Miss. 2011) (emphasis added) (citing *Dixon v. State*, 953 So. 2d 1108, 1112 (¶ 9) (Miss. 2007)). Said differently,

proximity is certainly an element,"*but by itself is not adequate* in the absence of other incriminating circumstances." ***Curry***, 249 So. 2d at 416 (emphasis added). Indeed, "[o]ther incriminating circumstances *must be present* to establish constructive possession." ***Knight***, 72 So. 3d at 1063 (¶ 26) (emphasis added) (citing ***Dixon***, 953 So. 2d at 1112 (¶ 9)).

¶16.    Because Walker was not alone in the vehicle and thus was not in exclusive control and possession of the methamphetamine, "additional incriminating facts must connect [her] with the contraband." ***Powell v. State***, 355 So. 2d 1378, 1379 (Miss. 1978) (holding that, "[w]here the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting [her] with the contraband" (citing ***Sisk v. State***, 290 So. 2d 608 (Miss. 1974))).The Court finds there was insufficient evidence to support Walker's conviction. While the State proved Walker's ownership of the vehicle and her proximity to the substance found between the driver's seat and the center console, the State failed the present any other competent evidence connecting her to the methamphetamine.

¶17.    Similarly, in ***Smoots v. State***, law enforcement seized crack cocaine from Smoots's pool hall after an informant reported that he purchased crack cocaine at the pool hall using marked bills, and Smoots was indicted and convicted for possession of cocaine, even though there were two other men present when the substance was seized. ***Smoots v. State***, 310 So. 3d 1184, 1187 (¶ 12) (Miss. Ct. App. 2020). Specifically, when law enforcement arrived, Smoots and two other men were seated around a table when the officers heard a toilet running and, suspecting that one of the men had flushed drugs, the officers found the cocaine

in the sewer cleanout outside. *Id.* at 1186 (¶ 4). The Court of Appeals reversed Smoots's conviction, holding that "the evidence was insufficient for a rational juror to find beyond a reasonable doubt that Smoots—as opposed to either of the two men present in the pool hall—possessed and flushed the cocaine." *Id.* at 1186 (¶ 2).

¶18. The only evidence presented against Smoots was that he owned the pool hall, was present when the cocaine was seized, and had marked bills in his pocket. *Id.* (¶ 5). The Court of Appeals reversed Smoots's conviction, reasoning as follows:

> The State's evidence probably was sufficient for a rational juror to infer that *one of the three men* in the pool hall flushed the cocaine down the toilet just before the officers entered. But that is all it could prove. The evidence was not sufficient to prove beyond a reasonable doubt that *Smoots*—and not one of the other two men—was guilty of possessing and flushing the drugs.
>
> . . . .
>
> . . . The evidence permitted only an inference that one of the three men was guilty, and the jury could only guess as to the guilty party. A criminal conviction cannot rest on such "substantial guesswork, speculation and conjecture."

*Id.* at 1189 (¶ 18-19) (footnote omitted) (citations omitted).

¶19. Like in *Smoots*, there is no evidence that Walker, as opposed to Buckley, possessed the methamphetamine. The fact that Walker owned the vehicle and was in close proximity to the methamphetamine only raises the inference that she possessed it. Thus, like in *Smoots*, without more, the jury could only guess that Walker possessed the methamphetamine rather than Buckley. As the Court has held, proof that Walker "*might* have" possessed the methamphetamine by virtue of her merely being in and owning the vehicle is insufficient to support her conviction; the State was required to show more than just ownership of the

10

premises and proximity to the substance. *Edwards v. State*, 469 So. 2d 68, 71 (Miss. 1985) (holding that proof that the defendant "*might* have" committed a crime is insufficient to support a conviction). Because "conviction in criminal cases must rest upon finite evidence and not probabilities or surmise[,]" we hold that the evidence was insufficient to convict Walker. *Sisk v. State*, 294 So. 2d 472, 475 (Miss. 1974).

¶20. In *Ferrell v. State*, 649 So. 2d 831, 835 (Miss. 1995), the State charged a driver of a car with possession of crack cocaine. The State contended there that the proximity of the crack to the driver along with the duration of the driver's control over the vehicle incriminated the driver, but the Court disagreed. Citing *Fultz v. State*, 573 So. 2d 689 (Miss. 1990), the *Ferrell* Court wrote as follows:

¶21.    Just as in *Fultz*, the contraband was not positioned in such a way that its presence would be reasonably apparent to a person riding in the car. The mere fact that the [contraband] was only a matter of inches from where the defendant was sitting, rather than in the trunk, does not overcome the fact that the crack was cloaked. Furthermore, Ferrell's possession of the car for a mere 15 hours does not qualify as an incriminating circumstance.

*Ferrell*, 649 So. 2d at 835 (citation omitted).

### CONCLUSION

¶22. We hereby reverse and render Jessica Walker's conviction for insufficient evidence.

¶23. **REVERSED AND RENDERED.**

**KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**RANDOLPH, CHIEF JUSTICE, DISSENTING:**

11

¶24. I write not to disagree with Walker's testimony regarding guilt or innocence or to seek to determine her credibility as a witness. From the record, however, it is clear that Walker contradicted herself during her testimony. Thus, the twelve selected members of Walker's community did not act irrationally by deciding against her.

¶25. After the State rested its case-in-chief, Walker moved for a directed verdict, arguing that the prosecution failed to meet the elements of the charged offense. The trial judge denied her motion, finding that "[t]he State has, at this point, met a prima facie case of the elements of the charged crime, and, taking all that evidence that has been presented and admitted in a light most favorable to the State, the Court will deny the motion for directed verdict."

¶26. Before closing arguments, the trial judge provided the jury with instructions on the law. This Court presumes that jurors follow the instructions of the trial court. *Pitchford v. State*, 45 So. 3d 216, 240 (Miss. 2010). The trial judge instructed the jury that "to constitute a possession, there must be sufficient facts to warrant a finding that the Defendant was aware of the presence and character of the particular substance or weapon and was intentionally and consciously in possession of it." Further, the trial judge instructed that possession need not be actual physical possession but that "constructive possession may be shown by establishing that the substance or weapon involved was subject to the Defendant's dominion and control." Moreover, the trial judge instructed that "[a] person is presumed to be in constructive possession of his automobile's contents when he is occupying or exercising control over the automobile, but that presumption is rebuttable by other evidence." Lastly, as to constructive

12

possession, the trial judge instructed the jury that "possession of a controlled substance may be actual or constructive, individual or joint."

¶27. The trial judge set forth the elements of possession of a controlled substance while in possession of a firearm: "[a] person has constructive possession when he or she lacks actual possession of the thing or object but knowingly has both the power and the intention, at a given time, to exercise control or dominion over the thing or object, either directly or through another person." Further, "[i]f the State fails to prove beyond a reasonable doubt that [Walker] was aware of the nature and quality of the item that was in her proximity, then you should find the Defendant 'Not Guilty.'" Additionally, "[p]roximity is usually an essential element of constructive possession, but by itself is not adequate *in the absence of other incriminating circumstances*." Lastly, "[t]he Court instructs the jury that in order to reach a verdict in this case, all 12 of you must agree to that verdict."

¶28. This Court reviews whether the evidence is sufficient to sustain a conviction de novo. *Green v. State*, 269 So. 3d 75, 79 (Miss. 2018) (citing *Brooks v. State*, 203 So. 3d 1134, 1137 (Miss. 2016)). When reviewing a challenge to the sufficiency of the evidence, this Court determines whether "any rational trier of fact could have found each element of the crime beyond a reasonable doubt . . . ." *Mujahid v. State*, 324 So. 3d 275, 281 (Miss. 2021) (alteration in original) (internal quotation marks omitted) (quoting *Pace v. State*, 242 So. 3d 107, 119 (Miss. 2018)). Further, "[a]ll credible evidence [that] is consistent with guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Haynes v. State*, 250 So. 3d 1241, 1244 (Miss. 2018)

13

(alterations in original) (internal quotation marks omitted) (quoting **Burrows v. State**, 961 So. 2d 701, 705 (Miss. 2007)).

¶29. "To support a conviction for possession of a controlled substance, 'there must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.'" **Glidden v. State**, 74 So. 3d 342, 345 (Miss. 2011) (alteration in original) (citations omitted) (quoting **McClellan v. State**, 34 So. 3d 548, 553 (Miss. 2010)). Possession may be actual or constructive. **Sills v. State**, 359 So. 3d 603, 610 (Miss. 2023) (quoting **Terry v. State**, 324 So. 3d 753, 755 (Miss. 2021)). "An item is within one's constructive possession when it is subject to his dominion or control. Constructive possession may be established by direct evidence or circumstantial evidence." **Keys v. State**, 478 So. 2d 266, 268 (Miss. 1985).

¶30. Additionally, "*one* who is the *owner* in *possession* of the premises, or the *vehicle* in *which contraband is kept or transported*, is presumed to be in constructive possession of the *articles* found *in or on the property possessed*." **Williams v. State**, 334 So. 3d 68, 73 (Miss. 2022) (emphasis added) (internal quotation marks omitted) (quoting **Dixon v. State**, 953 So. 2d 1108, 1113 (Miss. 2007)). Unquestionably, that presumption can be rebutted, "[b]ut the fact that others had access to the premises, by itself, is not necessarily sufficient to rebut the presumption of constructive possession as a matter of law." **Id.** (citing **Wolf v. State**, 260 So. 2d 425, 432 (Miss. 1972)).

¶31. Donna Chapman, deputy for the Newton County Sheriff's Department, was the arresting officer in this case. On the night of October 21, 2020, she participated in a roadblock situated at Pecan Road and Oak Street in Newton, Mississippi. Chapman testified that she encountered a vehicle driven by Walker that night. Chapman approached the driver's side window, and, as Walker was handing Chapman her driver's license, Chapman could smell marijuana emanating from inside the vehicle.

¶32. Chapman asked Walker to exit the vehicle. Chapman testified that there was also a passenger present inside the vehicle, Walker's boyfriend, Richard Buckley, and that Deputy Fred Hardy requested for Buckley to exit as well. When Chapman asked Walker whether she knew of anything inside of her vehicle that the deputies should know about, Walker responded that she had a 9 mm handgun under her driver's seat. As Walker exited the vehicle, Chapman observed a piece of brown paper containing marijuana balled up in the driver's seat where Walker was sitting.

¶33. Chapman then conducted a further search of Walker's vehicle. Chapman testified that "[b]etween the driver's seat and the center console, there was a *clear bag* containing what we believed at the time to be methamphetamine." (Emphasis added.) When asked whether the methamphetamine was recovered under the driver's seat, Chapman responded that "[i]t was wedged between like the seat and the console were touching, and it was wedged right in the middle." Chapman testified that the basis for her belief that Walker committed the infraction was because Walker was the driver of the vehicle and because the methamphetamine "was found in the driver's side, [in] close proximity to her." Chapman

15

testified that nothing of evidentiary value was found on the passenger side or the rear of the vehicle. She further testified that she had no reason to believe that Buckley committed any infraction, and no charges were made against him that night.

¶34. Chapman explained that if Buckley had said that the methamphetamine belonged to him or if there was reason to believe that the methamphetamine belonged to him, he would have been the individual charged with possession. Chapman reiterated that the handgun was recovered from under the driver's seat, its magazines were recovered in the driver's side door, the marijuana was recovered on the driver's seat, the methamphetamine was recovered between the driver's seat and the center console, and Walker was the driver of the vehicle. Chapman agreed with the prosecutor that, in her experience, it was common for individuals to be open about noncriminal or misdemeanor infractions while being less than candid regarding felony infractions.

¶35. Walker chose to testify in this case. Walker informed the jury that her vehicle was a 2013 Buick LaCrosse Premium. According to Walker, she drove her vehicle to work at 5:00 a.m. that morning and left at 1:00 p.m. She gave a friend a ride in her vehicle at 1:30 p.m. After that, she drove her vehicle to her second job in Philadelphia, Mississippi, until 5:00 p.m.; then, she drove her vehicle to her mother's house in Newton.

¶36. Walker's boyfriend, Buckley, was at her mother's house when Walker arrived and asked if she could drive him to get a tattoo at his friend's house. Walker responded to Buckley that "I can take you as long as you drive because I was tired." According to Walker,

16

she let Buckley drive her vehicle even though he did not have a valid driver's license. Walker then related that

> [w]hen we got there, they wasn't there. We sat there about an hour and 30 minutes. They didn't ever come, so we was going back to my mom's house. And we was coming I guess—what's that—Pecan Road—the main street—whatever they had a roadblock—and we seen the roadblock. So what we did, we switched seats. I was on the passenger side; he was driving. We swapped seats because my seats in my car, it goes all the way back.

Walker also testified that her center console could be laid down.

¶37. When asked why the two switched seats, Walker responded, "[b]ecause he didn't have a driver's license." Walker further testified that

> We got to the roadblock, Officer Chapman, Officer Fred Hardy and Officer Winford, they were all on the driver's side. I handed my driver's license. Officer Fred Hardy said he smelled marijuana; could I step out of the car. I said sure. I put *my car* in park, and I explained to Officer Chapman when I was getting out, I said, *my gun* is under the driver's seat, and *my clips* are in the door.

(Emphasis added.)

¶38. After consenting to a search, when Chapman asked whether anything else was in the car, Walker testified that she responded, "[n]o, ma'am." When defense counsel reminded Walker that she did have marijuana with her, Walker responded, "[i]t was some on *my seat*. Well, yes, sir. *I did so it was on my seat*." (Emphasis added.) When asked again whether the marijuana belonged to her, Walker answered, "[y]es, sir."

¶39. On cross-examination, Walker did not dispute that she was the individual driving the vehicle when she and Buckley reached the roadblock. She also did not dispute that she was the owner of the 2013 Buick LaCrosse. She did not dispute that she had spent a large amount

of time in her vehicle that day. She did not dispute that she owned the gun recovered from under her seat as well as the magazines to that gun in her door. She did not dispute ownership of the marijuana recovered in her driver's seat.

¶40. Walker agreed that she occasionally smoked marijuana at that time. She did not dispute that she had knowledge of the presence of marijuana in her vehicle. When asked whether she disputed ownership of the marijuana, Walker replied, "I don't dispute it at all." Additionally, when asked whether she was trying to hide the marijuana or whether it just fell out of her lap, she answered, "[n]o sir. It was there. You know, I knew they smelled it. They said they smelled it. You know, I didn't smell it, but it was there. And she asked me was that marijuana, and I said, well, yes. *But I didn't acknowledge that it was mine, but you know, it was there*." (Emphasis added.)

¶41. Walker agreed that Buckley was a large man. When asked whether she ever told the law enforcement officers that she and Buckley had switched seats, Walker answered, "*[n]o*." (Emphasis added.) Then, she further testified that "[w]hen . . . I was gone say at the roadblock, Ms. Chapman, when I was talking to her, I told her about my gun. That's it. You know, I didn't tell her we swapped seats or nothing like that. *I didn't know there was drugs in my car*. But . . . when they found the drugs, he claimed ownership for them." (Emphasis added.) Walker's testimony, which did not generate an objection, that Buckley claimed ownership of the methamphetamine provided the jury with an opportunity to observe the conflicts present in Walker's theory of the case in comparison with Chapman's testimony.

¶42. Walker was asked, "[d]eputies . . . found drugs in the car, talked to a person, and that person said, 'that's mine' and they didn't arrest him. That's what you want this jury to believe?" Walker responded,"[t]hat's what happened." Walker was further asked, "[a]nd you want this jury to believe that a guy, [who's] bigger than me, is in a Buick LaCrosse and sees a roadblock driving down the middle of the road and is able to stop, scoot over, let you get over and you still have your marijuana in your lap?" She responded that "[w]e *didn't make a complete stop*, and the way my seat is in my car, they can let back. I'm little, as you can see. *I can crawl over and still be driving; he can crawl over on the other side*. We've done it." (Emphasis added.)

¶43. Walker further answered that "[w]e was rolling. We was just going slow. I grabbed control of the wheel and got—pulled over and got the pedal. So when he got over, I just sit down. By that time, we was coming up to the roadblock. If they remember, my seat wasn't even let up. I had to scoot up to reach my gas pedal." When asked how Buckley got over the console, Walker asserted that "[m]y console is not that high. My console is . . . adjusted with my seat. You can crawl over it." Walker further answered that she had her marijuana "in my hand already balled up. It's in a piece of paper. Okay? I crossed over the seat; grabbed the steering wheel; sat down."

¶44. Walker admitted to having knowledge of all the contents in her vehicle; but as to the methamphetamine recovered within inches of where she sat, she "[n]ever seen it; never acknowledged it; didn't know it was." When asked where the methamphetamine was located, Walker agreed that it was in between the seat and the console and that she "never

19

looked over there in between my seats." Walker asserted that she let Buckley, who did not have a valid driver's license, drive her car "because I was tired, but *I don't let my car go nowhere without me. I'm always in my car*." (Emphasis added.)

¶45. The jury, as the sole judge of the evidence and credibility of witnesses, unanimously found Walker guilty. **Jackson v. State**, 580 So. 2d 1217, 1221 (Miss. 1991) ("The jury is the sole judge of the weight and credibility of the witness." (citing **Dixon v. State**, 519 So. 2d 1226, 1228 (Miss. 1988))). Walker now appeals, challenging the sufficiency of the evidence.

¶46. Walker contends that no other evidence connected her to the methamphetamine other than her proximity to the substance. The trial judge and the jury found otherwise. There was no dispute that Walker owned the 2013 Buick LaCrosse. There was no dispute that Walker was driving the vehicle when she and Buckley went through the roadblock. There was no dispute that Walker was exercising dominion and control of the vehicle at that time. Accordingly, Walker is presumed by law to be in constructive possession of all of the vehicle's contents. *See* **Williams**, 334 So. 3d at 73.

¶47. Walker attempts to rebut this presumption by asserting, *for the first time at trial*, that actually Buckley had been driving until they switched seats. For the jury to believe Walker's rebuttal, they would have to find her story credible that a large man saw a roadblock, and, in a split-second without stopping, he crawled over the center console to the passenger seat while Walker, at the same time, managed to get herself into the driver's seat—all the while with one hand holding the steering wheel and somehow holding onto her marijuana with her other hand. Her testimony certainly is evidence; however, this evidence is in conflict with

20

the totality of evidence presented. Again, "[t]he 'jury is the sole judge of the weight of the evidence and the credibility of the witnesses,' . . . ." *Renfro v. State*, 118 So. 3d 560, 564 (Miss. 2013) (quoting *Ewing v. State*, 45 So. 3d 652, 655 (Miss. 2010)).

¶48. Moreover, Walker further attempts to rebut the presumption by arguing that she had no knowledge a bag of methamphetamine was wedged in between the driver's seat and center console. To find this rebuttal credible, the jury would have needed to believe that, at some point unknown to her, someone or her boyfriend put a bag of methamphetamine between the driver's seat and center console without Walker's knowledge. Walker professed to be an individual who never let her car go anywhere without her and asserted that she was always in her car.

¶49. Walker was driving the vehicle as it approached the roadblock, Walker knew that her gun was under her seat, Walker knew that her magazines were in her driver's side door, and Walker knew that she was in possession of her marijuana. From Walker's extensive knowledge regarding the contents of her vehicle, combined with her physical proximity to the methamphetamine and the undisputed evidence she was driving when it encountered the roadblock, at least one rational juror could find beyond a reasonable doubt that Walker was aware of the presence of methamphetamine in her vehicle.

¶50. Accordingly, twelve rational jurors could find beyond a reasonable doubt that Walker was in constructive possession of the bag of methamphetamine. "The jurors are not required to hang their common sense on the coat-rack as they enter the courtroom for jury service." *Glidden*, 74 So. 3d at 346. Jurors are "permitted to draw such reasonable inferences from

the evidence as it seem[s] justified in light of [its] own experience." *Id.* at 349 (emphasis omitted) (internal quotation marks omitted). Walker does not contend that the jury was incorrectly instructed as to the law, and she does not assert that the jurors failed to follow the instructions of the trial judge. Walker seeks to overturn the jury's verdict because she disagrees with the jury's decision to disbelieve her contortionist theory of the case. Resolving conflicts in the evidence and making credibility determinations regarding the testimony of witnesses, however, is solely within the prerogative of the jury, not appellate judges. Because sufficient evidence was presented for a rational juror to find each essential element of simple possession while in possession of a firearm beyond a reasonable doubt, I respectfully dissent.