ON WRIT OF CERTIORARI

CARLSON, Presiding Justice,
for the Court:
¶ 1. Gary Allen Glidden was convicted of one count of possession of a controlled substance as defined by Mississippi Code Section 41-29-139(c) (Rev.2009). The Circuit Court for the First Judicial District of Harrison County, Judge Roger T. Clark presiding, sentenced Glidden to serve a term of four years in the custody of the Mississippi Department of Corrections. Judge Clark also sentenced Glidden to serve his imprisonment as an habitual offender under the provisions of Mississippi Code Section 99-19-81 (Rev.2007). After the trial court entered an order denying Glidden’s motion for a judgment notwithstanding the verdict, or in the alternative, for a new trial, Glidden perfected his appeal to us, and we assigned this case to the Court of Appeals. After consideration, the Court of Appeals affirmed the trial-court judgment. Glidden v. State, 74 So.3d 353 (Miss.Ct.App.2010). We granted Glidden’s petition for writ of certiorari. Glidden v. State, 58 So.3d 693 (Miss.2011). Finding that no reversible error occurred at trial, we affirm the judgment of the Court of Appeals, which affirmed the judgment of conviction and sentence of the Circuit Court for the First Judicial District of Harrison County.
FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. We set out here the facts relevant to today’s discussion. Some of the facts are gleaned from the opinion of the Court of Appeals. Glidden, 74 So.3d 353, 354-55, ¶¶ 2-3. We will include additional facts found in the record as warranted by our discussion.
¶ 3. On September 18, 2006, Gary Glid-den was installing an air conditioner in the home of Joseph Buckner. While he was working, Glidden received an emergency service call from a customer located a few blocks away. Glidden had no transportation, and Buckner allowed Glidden to borrow his pickup truck to respond to the service call.
¶ 4. The route Glidden traveled on his return to Buckner’s house caused him to come in contact with Sergeant Greg Goodman and Detective Steve Compston, both *344 of the Gulfport Police Department, who were conducting traffic stops in the City of Gulfport. Sergeant Goodman noticed a truck turning without using a turn signal. Detective Compston pulled the truck over to the side of the road. As the policemen exited their car, the driver of the truck (later identified as Glidden) exited the truck and walked to the rear of the truck. Sergeant Goodman walked to the passenger-side door and peered in the window to check for any other occupant. Sergeant Goodman immediately saw a large, clear, plastic bag on the driver’s-side floorboard containing what Sergeant Goodman believed was marihuana. Sergeant Goodman testified that “not even an inch” of the bag was under the driver’s seat, and the bag was in plain view. Detective Compston arrested Glidden. Both Sergeant Goodman and Detective Compston testified that they neither moved nor touched the plastic bag until after it was photographed. The bag was tested at the local crime laboratory. A forensic analyst from the Mississippi Crime Laboratory testified that the bag contained 450 grams of marihuana. No other drug paraphernalia was found on Glidden or in the truck. In his testimony, Compston confirmed that he had called in the tag number of the truck and that it was registered to Joseph Buckner.
¶ 5. At trial, Glidden testified that he had borrowed Buckner’s truck, that he had possession of the truck for only thirty minutes, and that the bag of marihuana was not on the floorboard while he was driving. He stated that, had the bag of marihuana been under his feet, he physically would not have been able to drive. According to Glidden, he knew Buckner only as his customer from the air-conditioning business and would never have gotten into the truck if he had known drugs were in the vehicle. Throughout his testimony, Glidden maintained that he was completely unaware that drugs were in the pickup and that they must have been hidden under the seat and must have slid out when he applied the brakes upon being stopped by the police officers.
¶ 6. After the presentation of all the evidence, the reading of the instructions to the jury, and counsel’s closing arguments, the jury retired to deliberate,[1] returning in due course with its verdict of guilty as charged. Judge Clark entered a judgment consistent with the verdict. At a subsequent sentencing hearing, Judge Clark sentenced Glidden to serve a term of four years imprisonment in the custody of the Mississippi Department of Corrections as a habitual offender under Mississippi Code Section 99-19-81 (Rev.2007). Upon Glid-den’s filing of the customary post-trial motions, Judge Clark entered an order denying these post-trial motions, and Glidden perfected his appeal. This Court assigned Glidden’s case to the Court of Appeals.
PROCEEDINGS IN THE COURT OF APPEALS
¶ 7. Before the Court of Appeals, Glid-den raised the following three issues, which we have restated for the sake of today’s discussion: Whether the trial court erred (1) in denying the motion for a judgment notwithstanding the verdict due to the insufficiency of the evidence to support the conviction, (2) in denying his proffered circumstantial-evidence instructions, and (3) in excluding evidence concerning a pending drug indictment against the owner *345 of the truck Glidden was driving on the day of his arrest, thus depriving Glidden of the opportunity to present one of his defenses to the indictment. Glidden, 74 So.3d at 355-56, ¶¶ 4-9.
¶ 8. A unanimous Court of Appeals found no merit in Glidderis arguments. After the Court of Appeals denied Glid-deris motion for rehearing, Glidden filed a petition for writ of certiorari, asking us to consider the same three issues which had been considered by the Court of Appeals. We granted certiorari. Glidden v. State, 58 So.3d 693 (Miss.2011).
DISCUSSION
¶ 9. In granting certiorari, we have the authority to “limit the question on review.” Miss. R.App. P. 17(h). Brown v. State, 39 So.3d 890, 895 (Miss.2010) (citing Brown v. State, 986 So.2d 270, 272 n. 1 (Miss.2008); Dora v. State, 986 So.2d 917, 921 n. 8 (Miss.2008)). As will be noted, based on an evenly divided Court in today’s case, our main concern in granting certiorari was whether the evidence presented at trial was legally sufficient to support the verdict finding Glidden guilty of the crime of possession of a controlled substance. A plurality of this Court finds the evidence was legally sufficient to support the verdict.
¶ 10. Before proceeding with our discussion on the main issue before us, we note briefly that, as to Glidderis remaining issues, we find the Court of Appeals very ably discussed these issues, correctly applying the law to the facts as revealed in the record. Accordingly, we adopt the Court of Appeals’ analyses on Issues II and III, and we find these issues to be without merit. Glidden, 74 So.3d at 355-56, ¶¶ 6-9.
WHETHER THE TRIAL COURT ERRED IN DENYING GLIDDEN’S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT DUE TO THE LEGAL INSUFFICIENCY OF THE EVIDENCE.
¶ 11. Thus, the issue we now discuss is whether, in this constructive-possession drug case, the evidence was legally sufficient to support the verdict. The dissent concludes that the evidence showed only that Glidden was in the vicinity of the nearly one pound of marihuana[2] in the pick-up truck he was driving, and nothing else. In other words, the dissent opines that there was “no independent incriminating evidence” to establish that Glidden constructively possessed the large, clear, plastic bag containing nearly one pound of marihuana found on the floorboard, almost completely exposed directly under the driver’s seat of the truck. We respectfully disagree.
¶ 12. In today’s case, the State was burdened with proving beyond a reasonable doubt that Glidden knowingly, willfully, unlawfully, and feloniously possessed the subject marihuana. When, as here, a defendant does not physically possess the illegal drugs, the State must prove constructive possession of the drugs in order to prevail. We recently stated:
To support a conviction for possession of a controlled substance, “there must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.” Wall v. State, 718 So.2d 1107, 1111 (Miss.1998) (quoting Curry v. State, 249 So.2d 414, 416 (Miss.1971)).
*346 McClellan v. State, 34 So.3d 548, 553 (Miss.2010).
¶ 13. Juries are not required to view these cases in a vacuum. The jurors are not required to hang their common sense on the coat-rack as they enter the courtroom for jury sendee. As is done on multiple occasions daily in the trial courts of our state, Judge Clark in today’s case appropriately instructed the jury on its solemn responsibilities in the case of State of Mississippi v. Gary Allen Glidden. Here are but a few examples of Judge Clark’s instructions to the jury:
As sole judges of the facts in this case, your exclusive province is to determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case. You are required and expected to use your good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified in this case.
The evidence which you are to consider consists of the testimony and statements of the witnesses and the exhibits offered and received. You are also permitted to draw such reasonable inferences from the evidence as seem justified in the light of your own experience.
(Jury Instruction C — 1) (emphasis added). The jury also was instructed that the burden was on the State to prove beyond a reasonable doubt that, inter alia, Glidden “did knowingly, wilfully, unlawfully and fe-loniously possess 250 grams or more but less than 500 grams of Marijuana.”[3] (Jury Instruction S-1B.) The Court also gave Instruction S-2, which stated:
The Court instructs the Jury that to constitute possession as applied to this case, it is not necessary that the State prove actual physical possession; it is sufficient if the State establishes that the substance involved was subject to the defendant’s dominion and control, and that he was aware or reasonably should have been aware of its presence and character.[4]
Finally, Judge Clark also granted Glid-den’s proposed Instruction D-7, which stated:
The Court instructs the jury that a reasonable doubt may arise from the whole of the evidence, the conflict of the evidence, the lack of evidence, or the insufficiency of the evidence but, however it arises, if it arises, it is your sworn duty to find the defendant “not guilty.”
¶ 14. Once the State rested its case-in-chief, Judge Clark granted Glidden’s motion for a directed verdict on the issue of possession with intent to sell or distribute, over the vigorous objection of the State, and the case went forward solely on the issue of simple possession. During his case-in-chief, Glidden, over objection of the State, was able to get before the jury, via the testimony of Deputy Circuit Clerk Paula Olson, that a man named Joseph Buckner had nine prior convictions for sale of a controlled substance. Over the objection of the State, the trial judge allowed nine certified copies of the sentencing orders to be received into evidence as defendant’s collective exhibit number one.[5] *347 Thus, Glidden was able to argue his theory to the jury that the 450 grams of marihuana found in Buckner’s pickup truck that Glidden claimed to have borrowed belonged to a nine-time convicted drug dealer, Joseph Buckner.[6]
¶ 15. Glidden was proven to be an habitual offender under Mississippi Code Section 99-19-81 (Rev.2007);[7] and under Mississippi Code Section 41-29-189(c)(2)(D) (Rev.2009), Glidden was facing the possibility of an eight-year sentence without parole. Instead, Judge Clark, in essence, applied the proportionality test as sanctioned by this Court in Clowers v. State, 522 So.2d 762, 765 (Miss.1988), and sentenced Glidden to a term of four years in the custody of the Mississippi Department of Corrections without the benefit of parole or probation.
¶ 16. Judge Clark fulfilled his solemn responsibility to afford Glidden the constitutionally fair trial to which he was entitled. The jury had before it Glidden’s theory that the 450 grams of marihuana were not his, but Buckner’s, someone who had multiple convictions for the sale of drugs. Also, due to Judge Clark’s partial grant of Glidden’s motion for a directed verdict, Glidden’s exposure was dramatically reduced from the possibility of a thirty-year sentence[8] as an habitual offender, to a possible maximum sentence of eight years, and yet he received only a four-year sentence.
¶ 17. Additionally, if one “reads between the lines” as to what Glidden and his lawyer were saying before the jury, one reasonably could infer that Glidden was insinuating that police officers either had planted the marihuana in the pickup truck, or at the very least, had manipulated the location of the marihuana in the pickup before photographing the bag of marihuana in the pickup after Glidden had exited his vehicle to meet Detective Comp-ston at the rear of the pickup. On direct examination, when describing the scene where he was stopped by the police, Glid-den stated:
And it wasn’t like that when I was driving the truck. It’s a very little truck. My feet won’t even fit in there. I would be stepping all over that. I don’t know if it came out when I hit the brakes. It might have come out then, but I did see one of the officers on the passenger side with a bag of pot, and there were six more police cars there, and they were passing it around. It got back in the truck. That’s the only way. If I would have saw something like that, I would have never got in the truck, point blank. But it was not like that.
During closing arguments, defense counsel stated to the jury:
How many time[s] have you been driving down the street and saw someone pulled over on the side and saw one car? How many times? Just on a traffic? There is usually two, sometimes three, sometimes more than that. One unmarked car, and they have got a pound of marijuana and you think these two officers are the only ones there.
*348 It’s not a rabbit hole. It’s what we don’t know. We don’t know what other officers were present. We don’t know what other officers were doing. He says he took the photograph, but did he have the camera on him or did he walk back to the patrol car to get it, and what happened during that period of time. This is not as simple as the state would have you think.
¶ 18. Sergeant Goodman testified that, once the stop of the pickup truck had been accomplished, he and Detective Compston had exited their vehicle, and Glidden had exited the pickup from the driver’s side, meeting Compston at the rear of the pickup. Goodman continued to the passenger side of the truck, which Glidden had parked on the left-hand side of the street. There was no one else in the pickup. Both the passenger-door window and the driver’s-side-door window were down. Sergeant Goodman had a clear view of the interior of the pickup by simply standing outside the passenger door and looking inside. Sergeant Goodman immediately noticed a zip-lock bag containing what he believed to be marihuana on the driver’s-side floorboard. Goodman testified that “not even an inch of [the bag] was under the driver’s seat,” meaning that most of the bag of marihuana was in plain view. Two photographs entered into evidence clearly depict the large bag of marihuana on the floorboard of the pickup, and Sergeant Goodman testified the photographs were taken prior to the bag of marihuana being moved.
¶ 19. Detective Compston, who was accepted without objection as an expert in the field of narcotics investigation, also saw the bag of marihuana in the pickup. Compston actually took the photographs entered into evidence. During the recross examination of Compston by defense counsel, Compston testified that the zip-lock bag was not fingerprinted because “[i]n my experience we have had very poor results receiving fingerprints off of a texture like this.” Compston clarified that the texture to which he was referring was a plastic bag, such as the zip-lock bag containing the marihuana. Notwithstanding this testimony concerning the difficulty in lifting identifiable fingerprints off plastic, defense counsel stated during closing arguments:
Couple other things I thought curious. Why didn’t they try and take fingerprints off this. It’s a heavy plastic bag. Everything we’ve learned about forensic is I just left my DNA all over that thing. They can do wonders now. Why is it they didn’t do it? Because the only print they were going to find on there were police officers. Isn’t that a possibility?
¶ 20. This Court once again had the occasion to address constructive possession in Hudson v. State, 30 So.3d 1199, 1203-04 (Miss.2010). In Hudson, we stated:
In other words, “[t]he law states that actual possession is not needed, that constructive possession will do.” Smith v. State, 839 So.2d 489, 497 (Miss.2003). Nevertheless, the “awareness” and “conscious intent to possess” elements apply to both actual and constructive possession. The only difference is that, with actual possession, the drug is actually found on the defendant’s person (ie., in his hands, mouth, pockets, etc.), whereas, with constructive possession, the drug is simply found “near” the defendant’s person in a place over which the defendant exercises dominion or control. Thus, “[t]he State ha[s] to prove that [the defendant] was aware of the cocaine and intentionally, but not necessarily physically, possessed it.” Id. “[T]o test whether the prosecution met this standard of proof in individual eases[,] each *349 case must be viewed in light of its individual facts and circumstances[.]”
Hudson, 30 So.3d at 1203-04 (citations omitted) (emphasis in original).
¶ 21. As already mentioned, in deliberating on its verdict, the jury had every right to apply common sense, common experience, and sound honest judgment in considering and weighing the testimony of the witnesses and the exhibits received into evidence. Unlike this Court, the jury had the opportunity, not only to hear Glid-den’s testimony, but also to observe Glid-den’s demeanor. In appropriately applying the jury instructions given by the trial judge to the evidence in today’s case, the jury was more than justified in finding Glidden guilty of possession of marihuana. We state again, for the sake of emphasis, that the jury was properly instructed by the trial judge, inter alia, that the jury’s “exclusive province” was to decide the weight and credibility to be assigned to the testimony of each witness. The jurors were informed that they were “required and expected” to use their “good common sense and sound honest judgment” in weighing the testimony of the witnesses who testified in the case. Finally, and most importantly, the jury was informed that it was “permitted to draw such reasonable inferences from the evidence as seem justified in light of your own experience.” (Emphasis added.) The jury had every right to consider all the evidence and conclude that Glidden was not telling the truth when he testified he had no idea the marihuana was in the truck he had been driving for thirty minutes.
¶ 22. In Dilworth v. State, 909 So.2d 731, 736 (Miss.2005), this Court once again reiterated the familiar test for appellate review of a criminal conviction when assailed on a claim of insufficient evidence to support the verdict:
Should the facts and inferences considered in a challenge to the sufficiency of the evidence ‘point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty,’ the proper remedy is for the appellate court to reverse and render [, i.e. reverse and discharge]. Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984); see also Dycus v. State, 875 So.2d 140, 164 (Miss.2004)). However, if a review of the evidence reveals that it is of such quality and weight that, ‘having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ the evidence will be deemed to have been sufficient.
Dilworth, 909 So.2d at 736 (quoting Bush v. State, 895 So.2d 836, 843 (Miss.2005)). See also Hudson, 30 So.3d at 1203.
¶23. This was a classic jury case— Glidden’s testimony versus the State’s testimony and supporting evidence, i.e., the photographs of the bag of marihuana in the location where police officers testified the marihuana was found at the time they stopped the truck Glidden was driving. Unfortunately for Glidden, the jury resolved these issues adversely to him. But the jury verdict was supported by legally sufficient evidence such that, based on our standard of review, it is beyond the power and authority of this Court to disturb on appeal.
CONCLUSION
¶24. Based on today’s discussion, the judgment of the Court of Appeals, which affirmed the Harrison County Circuit Court’s judgment of conviction for posses *350 sion of a controlled substance and sentence of four years as an habitual offender in the custody of the Mississippi Department of Corrections, is affirmed.
¶ 25. CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCE OF FOUR (4) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS A HABITUAL OFFENDER, WITHOUT THE ELIGIBILITY FOR PAROLE OR PROBATION, AFFIRMED.
RANDOLPH, LAMAR AND PIERCE, JJ„ CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, P.J., AND CHANDLER, J. KING, J., NOT PARTICIPATING.

. Of course, when the jury commenced its deliberations, the members of the jury had their recall of the testimony, the exhibits offered and received into evidence (including the photographs of the bag of marihuana as found on the driver’s side floorboard of the truck, according to the testimony of the police officers who conducted the stop of Glidden on the day in question), and the written jury instructions given by the trial judge.

. One pound contains 454 grams. This large bag contained an amount of marihuana just four grams shy of one pound.

.See Mississippi Code Section 41-29-139(c)(2)(D) (Rev.2009). Timothy Gross, a forensic scientist with the Mississippi Crime Laboratory (Gulfport Regional Laboratory), testified that the substance in the evidence bag presented to him for testing (which was shown by independent evidence to be the bag recovered from the truck Glidden was driving) was in fact marihuana, weighing 450.0 grams.

. Defense counsel had no objection to this instruction.

. Olson admitted that she did not know whether Joseph Buckner, who had been convicted in Harrison County Circuit Court for *347 these drug sales, was the same Joseph Buckner who owned the pickup truck being driven by Glidden on the day he was stopped by law enforcement officials.

.Before trial, the State had moved to exclude evidence of Buckner's prior convictions, but the trial judge had denied the State’s motion.

. Glidden's prior convictions consisted of burglary of a building for theft (two separate convictions), possession of Lysergic Acid Diethylamide (LSD), and felony escape.

. See Miss.Code Ann. § 41 — 29—139(b)( 1) (Rev. 2009).