# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01363-COA

**LONNIE LEE McDANIEL A/K/A LONNIE McDANIEL**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

DATE OF JUDGMENT:               08/22/2018
TRIAL JUDGE:                    HON. JON MARK WEATHERS
COURT FROM WHICH APPEALED:      FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: SCOTT STUART
DISTRICT ATTORNEY:              PATRICIA A. THOMAS BURCHELL
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 02/25/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., WESTBROOKS, LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     On April 16, 2017, Lonnie Lee McDaniel fled from Petal Police Department officers while driving a white vehicle. During the chase, Sergeant Gary Bounds observed McDaniel throw what "looked like a clear plastic bottle" from the white vehicle. While a bottle was never recovered, officers did find a plastic bag in the general location Sergeant Bounds described the plastic object landing. The bag contained methamphetamine. McDaniel was indicted by a Forrest County grand jury for felony fleeing, simple assault of a police officer,

and possession of a controlled substance.[1]  After a jury trial, he was found guilty of felony fleeing and possession of a controlled substance.  He was sentenced to serve a five-year term for fleeing and three years for possession of a controlled substance.  McDaniel's sentences were set to run consecutively.  In this direct appeal, McDaniel claims that the evidence against him at trial was insufficient to convict him of felony possession of methamphetamine under two grams and that his conviction was contrary to the overwhelming weight of the evidence.  We affirm McDaniel's conviction and sentence.

**FACTS**

¶2.     Lonnie Lee McDaniel was indicted as a habitual offender on November 14, 2017, for felony fleeing of a law enforcement officer, simple assault of a police officer, and possession of a controlled substance.  McDaniel had been previously convicted on two separate occasions in Forrest County, Mississippi, for felony possession of a controlled substance.

¶3.     At the trial on August 16, 2018, Gary Bounds, a patrol sergeant with Petal Police Department ("PPD"), testified that he was on duty on April 16, 2017, near Walmart on Evelyn Gandy Parkway in Petal, Mississippi.  At 11:18 a.m., Sergeant Bounds observed a white vehicle making a left-hand turn onto Byrd Park Boulevard.  The driver of the vehicle failed to use a turn signal.  Sergeant Bounds proceeded to run the license plate number on the vehicle.  The search revealed that the vehicle was registered to a female and that it had not

---

[1] On August 15, 2018, prior to trial, Count II of the indictment, simple assault of a police officer, was dismissed after an ore tenus motion made by the State.

been reported as stolen.

¶4.    Sergeant Bounds followed the vehicle into Walmart's parking lot. He noticed that the driver was a male, who was later identified as McDaniel.[2] Sergeant Bounds turned on his blue lights and attempted a traffic stop when McDaniel fled the parking lot toward Officer Joey Scott, who had arrived to provide backup. After nearly hitting Officer Scott, McDaniel began to drive westbound on Evelyn Gandy Parkway toward Old Richton Road. When he reached the intersection of Evelyn Gandy Parkway and Old Richton Road, McDaniel sped through a red light.

¶5.    Sergeant Bounds continued to follow McDaniel until McDaniel turned onto Lynn Ray Road. Sergeant Bounds testified that he saw the following events while chasing McDaniel down Lynn Ray Road:

> Q.    Okay. And what happened when you were on Lynn Ray?
>
> A.    We were still traveling at a real high rate of speed and strayed into the oncoming lane more than -- more than he did in our lane -- the -- in his lane he was supposed to be in. And we got to the church on Lynn Ray Road -- or just past the church on Lynn Ray Road, and I observed him throw something out the driver's side window.

---

[2] Officer Joey Scott identified McDaniel after McDaniel attempted to hit his patrol vehicle head-on in the Walmart parking lot. Officer Scott communicated that identification to Sergeant Bounds. From that moment on, Sergeant Bounds believed the driver to be McDaniel from Scott's identification. During his direct examination, Sergeant Bounds testified that he identified McDaniel himself when McDaniel jumped from the moving vehicle and looked at him before fleeing. Sergeant Bounds testified that he had known McDaniel for four or five years. Both Officer Scott and Sergeant Bounds told the jury they were "one hundred percent positive" that the driver of the white vehicle was McDaniel.

Q. What did you observe at the time of him throwing something out -- out of the window?

A. I observed like a clear plastic bottle.

Sergeant Bounds then radioed the dispatcher to document where the object was thrown from the window since Sergeant Bounds was still in pursuit of the vehicle. Sergeant Bounds testified that McDaniel threw the object out of the driver's side window near the Lynn Ray Baptist Church.

¶6. After running numerous vehicles off the road during the high-speed chase, McDaniel drove the vehicle down a logging road, opened the driver's side door while the vehicle was still moving, jumped out of the moving vehicle, and fled the scene. Sergeant Bounds's dispatch record, which was entered into evidence at trial, indicated that McDaniel abandoned the vehicle at 11:35 a.m. Sergeant Bounds proceeded to chase McDaniel on foot but was unsuccessful. He then radioed the K-9 unit to help locate McDaniel. They were also unsuccessful. Afterward, Sergeant Bounds returned to the abandoned white vehicle to search it. During his search he found a black cell phone that he secured in his patrol vehicle and logged into evidence.

¶7. Officer Scott confirmed Sergeant Bounds's testimony about the attempted traffic stop in the Walmart parking lot. He testified that he observed Sergeant Bounds pursue McDaniel in his patrol vehicle. Officer Scott attempted to pursue McDaniel as well but could not keep up. After McDaniel eluded arrest, Sergeant Bounds ordered Officer Scott to return to where McDaniel had thrown the item from the vehicle. Officer Scott's testimony about what he did

4

next is better described below:

> Q. What did you do?
>
> A. I [went] back to the location that [Sergeant Bounds saw] Mr. McDaniel [throw] something out of the window.
>
> Q. All right. Once you got there, what did you do?
>
> A. Once I got to that location?
>
> Q. Yes, sir.
>
> A. Myself and a deputy walked up the road, one on each side of the road, trying to, you know, locate where the item c[a]me out at and not -- I'd say back towards Petal on Leeville Road -- Lynn Ray Road, 40 or 50 yards, found a bag -- a clear bag with a crystal-like substance in it believe to be methamphetamine.

Officer Scott, along with Forrest County Sheriff's Department Deputy Joshua Dobbs, collected the bag, placed it in a PPD evidence bag, and took the evidence to the police department.

¶8. Casey Walley, an investigator with the PPD, told the jury about the two pieces of physical evidence he took into custody. First, he examined the black phone taken from the white vehicle. After obtaining a search warrant to open the phone and determine ownership, Investigator Walley found that the phone was logged into McDaniel's Facebook, Gmail, and Google accounts. Investigator Walley testified that the defendant's name, Lonnie McDaniel, was associated with all three accounts. Upon further investigation, Investigator Walley determined that the owner of the phone was labeled in the contacts section as "LL McDaniel." This indicated to Investigator Walley that Lonnie Lee McDaniel was the owner

5

of the phone that was found in the abandoned vehicle.

¶9. The second piece of physical evidence was the clear bag collected by Officer Scott. Investigator Walley testified that he sent the bag to the Mississippi Crime Laboratory for independent testing. Keith McMahan was tendered by the court as an expert in forensic analysis. His testing indicated that the clear bag collected by Officer Scott contained 1.785 grams of methamphetamine, a Schedule II controlled substance.

¶10. To rebut the State's evidence, the defense argued that McDaniel had an alibi for the time of the car chase. The defense claimed that McDaniel was at his aunt's home in Moselle, Mississippi, from between 11:30 a.m. and 12:00 p.m. until around 4:00 p.m. on April 16, 2017. As noted in Sergeant Bounds's dispatch record and in his testimony, McDaniel abandoned the vehicle at approximately 11:35 a.m.

¶11. After hearing all of the evidence, the jury returned a verdict of guilty for felony fleeing or eluding of law enforcement and possession of a controlled substance. The circuit court sentenced McDaniel as a habitual offender to serve five years in the custody of the Mississippi Department of Corrections ("MDOC") without eligibility for parole for his conviction of felony fleeing and to serve three years in MDOC's custody without eligibility for parole for possession of a controlled substance. These sentences were set to run consecutively. McDaniel filed a motion for judgment notwithstanding the verdict ("JNOV") or, in the alternative, a new trial, which was denied. He now appeals and argues that there was insufficient evidence for the jury to convict him and that the jury's decision was against

6

the overwhelming weight of the evidence.

## ANALYSIS

¶12.    At the onset, we note that McDaniel is procedurally barred from any claim that his conviction of felony fleeing was in error because he failed to raise the issue of that conviction on appeal.  McDaniel only addresses his conviction for possession of a controlled substance. As a result, this Court will only consider McDaniel's argument on the conviction and sentence for possession of a controlled substance.

> **I.    Whether or not there was sufficient evidence to support McDaniel's conviction for possession of a controlled substance.**

¶13.    McDaniel claims that the court erred in denying his motion for a JNOV.  "A motion for [a] JNOV challenges the sufficiency of the evidence presented to the jury." *Sacus v. State*, 956 So. 2d 329, 334 (¶12) (Miss. Ct. App. 2007).  This Court reviews challenges to the sufficiency of the evidence de novo.  *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018).  "When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Craig v. State*, 282 So. 3d 467, 470 (¶12) (Miss. Ct. App. 2019) (quoting *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017)).  "[I]f any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we will uphold the verdict." *Harris v. State*, 977 So. 2d 1248, 1250 (¶6) (Miss. Ct. App. 2008) (citing *Bush v. State*, 895 So. 2d 836, 844 (¶16) (Miss. 2005), *overruled on other grounds by Little v. State*, 233 So. 3d 288, 292 (¶¶19-20)

(Miss. 2017)). It is not this Court's job to decide "whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010).

¶14. It is well-settled law that "[t]o support a conviction for possession of a controlled substance, 'there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.'" *Glidden v. State*, 74 So. 3d 342, 345 (¶12) (Miss. 2011) (quoting *Wall v. State*, 718 So. 2d 1107, 1111 (¶7) (Miss. 1998)). Mississippi Code Annotated section 41-29-139(c) (Supp. 2016) specifically provides that "[i]t is unlawful for any person knowingly or intentionally to possess any controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner . . . ." That possession can either be "actual or constructive." *Johnson v. State*, 81 So. 3d 1020, 1023 (¶7) (Miss. 2011).

¶15. "To establish constructive possession, the drug simply has to be found near the defendant 'in a place over which the defendant exercises dominion or control.'" *Fontenot v. State*, 110 So. 3d 800, 804 (¶9) (Miss. Ct. App. 2012) (quoting *Glidden*, 74 So. 3d at 348 (¶20)). The defendant's location in connection with the drugs "is not a determinative factor in establishing constructive possession." *Id*. (citing *Knight v. State*, 72 So. 3d 1056, 1063 (¶26) (Miss. 2011)). Notably, "[t]he elements of constructive possession may be proven by circumstantial evidence." *Bates v. State*, 952 So. 2d 320, 325 (¶21) (Miss. Ct. App. 2007)

(citing *Martin v. State*, 413 So. 2d 730, 732 (Miss. 1982)).

¶16.    During the trial, the State presented the jury with ample evidence to consider whether or not McDaniel had actual or constructive possession of the drugs found: (a) eyewitness testimony from Officer Scott and Sergeant Bounds that the driver of the white vehicle was McDaniel; (b) eyewitness testimony from Sergeant Bounds that McDaniel threw a plastic object from the vehicle during the chase; (c) testimony from Sergeant Bounds as to the proximate location of the thrown plastic object; (d) testimony from Officer Scott that the plastic bag was found shortly after the chase ended in the proximate location Sergeant Bounds described; (e) testimony from Investigator Walley that the cell phone found inside the white vehicle was logged in to McDaniel's social media and email accounts; and (f) expert testimony that the contents of the plastic bag were methamphetamine.  In addition, the circuit court properly instructed the jury on what constructive possession of a controlled substance entailed.  The defense did not object to the State's instruction.

¶17.    Under our long-established system of criminal justice, the jury is the finder of fact. *Brown v. State*, 764 So. 2d 463, 467 (¶9) (Miss. Ct. App. 2000).  The jury is "charged to listen to the evidence, observe the demeanor of the witnesses, and decide this issue of the credibility of the witnesses and what weight to give to any particular piece of evidence." *Id*. "The jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." *Cantrell v. State*, 224 So. 3d 1278, 1281 (¶15) (Miss. Ct. App. 2017)

9

(quoting *Whitlock v. State*, 47 So. 3d 668, 675 (¶21) (Miss. 2010)). Reviewing the evidence in the light most favorable to the State, rational jurors could have found that the State proved each element needed to convict McDaniel. Accordingly, the evidence was sufficient to support McDaniel's conviction, and the circuit court did not commit error by denying McDaniel's motion for a JNOV.

## II. Whether the verdict was against the overwhelming weight of the evidence.

¶18. McDaniel also asserts that the circuit court erred in denying his motion for a new trial. While McDaniel made his motion for a JNOV at the same time as his motion for a new trial, the two have separate standards of review. A motion for a new trial challenges the weight of the evidence. *Daniels v. State*, 107 So. 3d 961, 963 (¶12) (Miss. 2013). This Court will only reverse the denial of a motion for a new trial if the trial court abused its discretion. *Id*. This Court must "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little*, 233 So. 3d at 289 (¶1). "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id*.

¶19. As described above, the jury was presented with more than enough evidence to consider whether or not McDaniel committed the crimes he was indicted for. After considering the witnesses' credibility and their testimony, the jury determined that McDaniel was guilty of felony fleeing and was in possession of a controlled substance. In viewing the

evidence in the light most favorable to the verdict, we do not find that the jury's verdict was contrary to the overwhelming weight of the evidence, and the circuit court did not abuse its discretion in denying McDaniel's motion for a JNOV or a new trial.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**