# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01400-COA

PIERRE THOMAS, II A/K/A PIERRE THOMAS, JR.                    APPELLANT

v.

STATE OF MISSISSIPPI                                          APPELLEE

DATE OF JUDGMENT:            09/20/2024
TRIAL JUDGE:                 HON. MICHAEL M. TAYLOR
COURT FROM WHICH APPEALED:   LINCOLN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: ALEXANDRA LEBRON
DISTRICT ATTORNEY:           DEE BATES
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 05/05/2026
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Pierre Thomas was found guilty in the Circuit Court of Lincoln County, Mississippi, of unlawful possession of at least 250 grams but less than 500 grams of methamphetamine with the intent to distribute, as charged in Count I of his indictment, and unlawful possession of at least 10 grams but less than 30 grams of cocaine with the intent to distribute, as charged in Count II.  For Count I, Thomas was sentenced to serve a term of twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) and, for Count II, to a term of fifteen years in the custody of the MDOC, with five years suspended and ten years to serve. Thomas was sentenced as a non-violent habitual offender for both convictions, and the

court ordered the sentences to be served day for day and to run consecutively. He appeals his convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2. On July 3, 2021, Reginald Cain was on patrol working for the Brookhaven Police Department. While out on patrol that day, Cain recognized a Grand Marquis traveling past his vehicle in the opposite direction. Cain testified at trial that he recognized the vehicle and identified the driver as Pierre Thomas. Cain testified that he had known Thomas "for a few years" and, in fact, had initiated a stop on Thomas in the same vehicle just one month before the date of the current stop. According to Cain, on the date of the prior stop, Thomas pulled over, locked the vehicle, and fled the scene. Because of this prior encounter, Cain testified that he turned his patrol car around to follow Thomas. Cain contacted dispatch to verify ownership of the vehicle and to see if Thomas had any active warrants. Dispatch informed Cain that the vehicle was registered to Jennell McClendon and that there was an active warrant for Thomas' arrest. Based upon this information, Cain activated his blue lights to initiate a traffic stop.

¶3. Thomas did not immediately stop, and Cain continued to follow Thomas to the local Moose Lodge parking lot. After making a loop in the parking lot, Thomas exited the vehicle and started walking away. Despite being instructed over Cain's patrol car PA system not to run, Thomas locked the doors to the vehicle and started running into the back yard area of a nearby house. The dash camera video from Cain's patrol car, entered into evidence at trial, showed a man in a white shirt and shorts exit the Grand Marquis and walk out of view, just

2

as Cain had testified. Cain identified Thomas as the man in the video and the man he knew as Pierre Thomas. According to Cain, he followed Thomas into the driveway of the house where Thomas fled. Cain called for backup and, despite a thorough search of the surrounding property, Thomas was not apprehended that day.

¶4.   Cain was also wearing a body camera on the day of the stop, and the recording was entered as an exhibit at trial. This video corroborated Cain's testimony that he searched the neighboring property but was unable to locate Thomas. After Thomas returned to the parked Grand Marquis, Jennell McClendon pulled up in another vehicle. McClendon told Cain and other officers present that she had received a "private call" from a young girl who told her that her car was in the Moose Lodge parking lot. According to McClendon, she did not know the identity of the caller. When Cain questioned McClendon about the driver of the vehicle that day, she indicated that she did not know who was in the car on that particular day. However, McClendon stated that she was in the process of selling the car to Thomas and that she had been letting him drive it. McClendon also stated that she did not have any spare keys to the car. Cain advised McClendon that the car was going to be towed and held until Thomas reported to the police station. Cain's interaction with McClendon was also captured on his body-cam video that was introduced at trial.

¶5.   The Grand Marquis was towed to the police station, and a search warrant for the vehicle was executed. Cain's body camera recorded the vehicle search and was entered into evidence at trial. Several items of interest were found in the vehicle during the search. What appeared to be a "cookie" of cocaine was found between the front driver's seat and

3

passenger's seat. A bag was found on the back passenger side floorboard containing what appeared to be different types of narcotics in pill form, a green leafy substance, and other white powdery and crystal substances. There was also a small set of scales and a box of ammunition found in the vehicle. Further, the officers found an invoice dated May 28, 2021, made out to "Pierra" Thomas for repair work that was done on the vehicle. The evidence was delivered to the Mississippi Forensics Laboratory to be tested for controlled substances. Evidence at trial showed that the crime lab tested the items submitted and found 284.83 grams of methamphetamine and 11.75 grams of cocaine. Thomas was indicted by the grand jury on July 19, 2022.

¶6.     At trial, Thomas denied that he was the individual shown in Cain's dash-cam video. Thomas testified that he had been a drug dealer in the past but had not been involved with drugs since approximately 2015. Thomas also stated that while he previously had possession of McClendon's Grand Marquis, he had returned the vehicle to McClendon prior to the incident in question. Thomas claimed that despite trying to fix the car, as evidenced by the receipt found in the glove box, the car had additional problems. Thomas claimed that he did not want to invest any more time or money into the car and that this was the reason for him giving the vehicle back to McClendon.

¶7.     McClendon testified for the defense at trial, and her testimony was inconsistent with the statements that she had made to law enforcement on the day of the incident. McClendon testified that Thomas had returned the vehicle to her house prior to the incident in question. She stated that she had not cleaned out the car and that the car was parked in her front yard.

4

According to McClendon, she left her set of keys inside the car, and multiple people had come by to test drive the vehicle. McClendon testified that Thomas had a set of keys to the vehicle that he failed to return.

¶8. After a two-day trial, a jury found Thomas guilty of both counts of the indictment. On appeal, Thomas argues that the verdicts were contrary to the weight of the evidence.

## STANDARD OF REVIEW

¶9. Our standard of review of a challenge to the weight of the evidence has been clearly announced by the Mississippi Supreme Court in *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017):

> We granted certiorari to clarify the appellate court's role when reviewing a motion for new trial. Despite this Court's prior language suggesting otherwise, neither this Court nor the Court of Appeals assumes the role of juror on appeal. We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury. Our role as appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

## ANALYSIS

¶10. Thomas' challenge to the weight of the evidence to support his convictions was properly preserved for appellate review by filing a motion for a new trial, which was denied by the trial court. *See Manyfield v. State*, 296 So. 3d 240, 251-52 (¶40) (Miss. Ct. App. 2020). On appeal Thomas argues:

> The weight of the evidence did not support a conclusion, beyond a reasonable doubt, that Thomas was the person allegedly observed leaving the scene of the traffic stop in the Moose Lodge parking lot. Nor did the weight of evidence support a conclusion, beyond a reasonable doubt, that even if Thomas was

5

identified that he constructively possessed the accused contraband.

We will address Thomas' claims concerning evidence of identification and constructive possession separately below.

### I. Was the jury's determination that Thomas was the person driving the vehicle and fleeing from the vehicle at the time of the traffic stop against the overwhelming weight of the evidence?

¶11. Thomas argues that Cain's opportunity to observe the driver of the Grand Marquis was "fleeting." Thomas suggests that Cain's identification of Thomas as the driver was "influenced by his presumption that he initially thought Thomas was driving the same vehicle from [his] stop of Thomas a month earlier." That is the extent of his argument regarding the State's proof that Thomas was the driver of the vehicle. Thomas simply challenges the credibility of Cain's identification of Thomas.

¶12. The State points to Cain's trial testimony in which he told the jury that he had known Thomas for a few years. Cain testified that Thomas was the driver of the vehicle and identified the defendant in the courtroom. No one challenged Cain's in-court identification of Thomas.[1] Later, when the dash-cam video was played for the jury, Cain, again without objection, identified Thomas in the videos of the event. *See Bennett v. State*, 757 So. 2d 1074, 1076 (¶6) (Miss. Ct. App. 2000).

¶13. When Thomas testified that he was not driving the Grand Marquis on the date of the stop, this testimony presented a conflict in the evidence that the jury was required to resolve.

---

[1] While the defense filed a pre-trial motion in limine to prevent any other officer from identifying Thomas based upon their review of the video, the defense specifically did not seek to prevent Cain from identifying Thomas. At trial, the State did not seek to have any of its witnesses, other than Cain, identify Thomas.

In *Coleman v. State*, 411 So. 3d 137, 145 (¶33) (Miss. 2025), concerning conflicting testimony, the Supreme Court stated:

> The substance of Coleman's arguments amount to issues regarding the credibility of the witnesses. "Issues of fact and credibility are the primary responsibility of the trier of fact. Accordingly, this Court should not reweigh the facts nor substitute its judgment for that of the fact finder as to credibility issues." *Williams v. State*, 391 So. 3d 1151, 1158 (Miss. 2024) (internal quotation marks omitted) (quoting *McFadden v. Miss. State Bd. of Med. Licensure*, 735 So. 2d 145, 152 (Miss. 1999)). "Conflicting testimony does not evince overwhelming evidence; '[w]here the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury's duty to resolve the conflict.'" *Brown* [*v. State*], 995 So. 2d [698, ] 702 [(¶10) (Miss. 2008)] (alteration in original) (quoting *Nicholson v. State*, 523 So. 2d 68, 71 (Miss. 1988)).

Thomas testified he was not the driver of the Grand Marquis. Cain testified Thomas was the driver and identified Thomas on the body-cam video. This testimony clearly presented a conflict in the evidence that the jury was charged with resolving. The jury resolved this conflict by accepting Cain's testimony and unanimously finding that Thomas was the driver. Viewing the evidence identifying Thomas as the driver of the vehicle at the time of the stop in the light most favorable to the jury's verdict, we find that allowing the verdict to stand would not "sanction an unconscionable injustice." *Little*, 233 So. 3d at 292 (¶21).

> **II.** **Was the jury's finding that Thomas was in constructive possession of the controlled substances found in the Grand Marquis against the overwhelming weight of the evidence?**

¶14. The State did not contend that controlled substances were found on Thomas' person at the time of the traffic stop. In fact, because he fled and was not apprehended that day, Thomas' person was not searched. Therefore, Thomas claims, and we agree, that the State was required to prove constructive possession. Thomas argues that the State failed to prove

7

that he was in constructive possession of the controlled substances. Thomas contends that since he was not the owner of the vehicle, the State's case lacked the additional incriminating evidence necessary to connect him, beyond a reasonable doubt, to the contraband found in the Grand Marquis.

¶15. In a case alleging constructive possession, "there must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971). In *Curry*, the supreme court stated that "constructive possession may be shown by establishing that the drug[s] involved [were] subject to his dominion or control." *Id*. "Proximity is usually an essential element, but by itself is not enough in the absence of other incriminating circumstances." *Gavin v. State*, 785 So. 2d 1088, 1093 (¶16) (Miss. Ct. App. 2001).

¶16. As already discussed above, the jury's finding that Thomas was the individual driving the Grand Marquis on July 3, 2021, was not against the overwhelming weight of the evidence. The question remains whether the jury's determination that Thomas was guilty of constructively possessing the contraband discovered in the car was against the overwhelming weight of the evidence. Thomas argues that he was not the owner of the vehicle and, further, that there were multiple individuals who had access to the car prior to the discovery of the contraband. Thomas claims that no additional incriminating facts supported the jury's verdict. But Thomas fails to recognize, as discussed above, that the jury was not required to accept his testimony as the truth.

¶17.    In *Glidden v. State*, 74 So. 3d 342, 344 (¶5) (Miss. 2011), Glidden testified that he had borrowed a truck and had been in possession of the truck for only thirty minutes before being pulled over by law enforcement. During the stop, a bag of marijuana was found on the floorboard of the truck. *Id*. Glidden asserted that he was not aware of the presence of the contraband. *Id*. The supreme court held that "[t]his was a classic jury case – Glidden's testimony versus the State's testimony and supporting evidence, i.e., the photographs of the bag of marijuana in the location where the police officers testified the marijuana was found at the time they stopped the truck Glidden was driving. Unfortunately for Glidden, the jury resolved these issues adversely to him." *Id*. at 349 (¶23). As to constructive possession, the jury was instructed by the trial court, without objection:

> The Court instructs the Jury that to constitute possession as applied to this case, it is not necessary that the State prove actual physical possession; it is sufficient if the State establishes that the substance involved was subject to the defendant's dominion and control, and that he was aware or reasonably should have been aware of its presence and character.

*Id*. at 346 (¶13). The supreme court affirmed Glidden's conviction of possession of a controlled substance. *Id*. at 349-50 (¶24).

¶18.    The trial court in the present case instructed the jury, without objection, as to the facts necessary to find that Thomas was in constructive possession of the controlled substances found in the vehicle. There was substantial incriminating evidence tying Thomas to this contraband. At the time of the traffic stop, Thomas was the sole occupant of the vehicle. Cain testified that when he pulled Thomas over on July 3, 2021, Thomas locked the car doors and fled the scene despite Cain's directive to stop running. By Thomas' own testimony at

trial, he "used to be a drug dealer." When officers searched the inside of the vehicle at the police station, they found a "cookie" of cocaine visibly lodged between the driver's and passenger's seats of the car. Officers found multiple bags of what appeared to be marijuana and assorted pills and other substances on the floorboard of the passenger's side backseat. In addition to the items that were readily visible, officers found a set of scales underneath the driver's seat. While Thomas claims that he was not driving the vehicle at the time of the stop, the evidence shows otherwise. The jurors watched body-cam video from the Moose Lodge parking lot where Jennell McClendon told Cain that she was in the process of selling the Grand Marquis to Thomas and that she was letting him use the car. Cain testified that he had pulled Thomas over in the same vehicle during the month prior to the July 3, 2021 stop. Officers also found an auto repair invoice in the glove box of the vehicle that had the name "Pierra Thomas" at the top. Notably, the receipt was dated May 28, 2021. This is circumstantial evidence that Thomas had possession and had been driving the vehicle at least between May 28, 2021, and July 3, 2021. Much like the jury in *Glidden*, the jury in this case was tasked to reconcile McClendon's and Thomas' testimony versus the State's testimony and supporting evidence, and unfortunately for Thomas, the jury resolved these issues adversely to him.

¶19. Despite the jury's resolution of the conflicts in the evidence presented at trial, the dissent is based upon the testimony of McClendon and Thomas. In addition to *Glidden*, this Court again stated in *Anderson v. State*, 427 So. 3d 939, 945 (¶27) (Miss. Ct. App. 2026):

> Anderson's assertions, at bottom, raise issues regarding the credibility of the witnesses. But, as stated, "where the verdict turns on the credibility of

10

conflicting testimony and the credibility of the witnesses, it is the jury's duty to resolve the conflict." *Coleman* [*v. State*], 411 So. 3d [137,] 145 (¶33) [(Miss. 2025)] (internal quotation marks omitted). Here, both the State and the defense presented their theory of the case to the jury, and the jury "[was] free to accept or reject all or some of the testimony given by each witness." *Id*. at 146 (¶34). We will neither "reweigh the evidence" nor "make independent resolutions of conflicting evidence," as that is the jury's exclusive domain. *Little*, 233 So. 3d at 292 (¶20). "[V]iew[ing] the evidence in the light most favorable to the verdict," *Moore* [*v. State*], 348 So. 3d [322,] 327 (¶18) [(Miss. 2022)], as we must, we find that the jury's verdict is not against the overwhelming weight of the evidence. We further find that affirming Anderson's conviction would not sanction an unconscionable justice. Therefore, we find that Anderson's weight-of-the-evidence assignment of error is without merit.

We find the same to be true in the present case.

## CONCLUSION

¶20.    We find that the verdicts of the jury are not against the overwhelming weight of the evidence, and allowing these verdicts to stand "would not sanction an unconscionable injustice." We therefore affirm his convictions and sentences.

¶21.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, McCARTY, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY McDONALD, J.**

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶22.    I agree with the majority that the jury's determination that Thomas was the person driving the vehicle and fleeing the vehicle was supported by the evidence presented at trial. However, I would find that the evidence did not support the jury's finding that Thomas was in constructive possession of the controlled substances found in the vehicle. A "defendant's

11

proximity to the drugs is a factor in establishing constructive possession, but it is not determinative." *Knight v. State*, 72 So. 3d 1056, 1063 (¶26) (Miss. 2011). While the owner of the premises where contraband is found "is rebuttably presumed to be in possession of the contraband," this presumption is lacking when the defendant is not the owner. *Gavin v. State*, 785 So. 2d 1088, 1093 (¶17) (Miss. Ct. App. 2001).

¶23. The facts must support "a finding that the defendant was aware of the presence and character of the [drugs] and was intentionally and consciously in possession of it." *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971). Here, Thomas was not the owner of the vehicle. *See Fultz v. State*, 573 So. 2d 689, 691 (Miss. 1990) (reversing driver's conviction for constructive possession of drugs found in trunk of his sister's car). The two owners of the vehicle were actively trying to sell it. Multiple people had recently accessed the vehicle—either to look at it or drive it. To facilitate the access of those interested in purchasing the vehicle, McClendon stated that she went to work in McComb and left the keys in the vehicle, which was parked outside. *See Hudson v. State*, 362 So. 2d 645, 646-47 (Miss. 1978) (reversing conviction where evidence showed driver did not own the car and multiple people had access to the vehicle). Additionally, the State presented evidence that there was a crack or rock-like substance and scales tucked between the front seats (Count II), but much of the contraband—the methamphetamine—was found in black plastic bags in the back seat (Count I). It was not readily apparent or necessarily under the control of the driver of the car. *See Bates v. State*, 952 So. 2d 320, 326 (¶23) (Miss. Ct. App. 2007) (showing evidence that supported constructive possession where drugs were in plain view within arms

reach of defendant and defendant appeared to attempt to chew and swallow the drugs as police approached); *see also Jones v. State*, 693 So. 2d 375, 375-76 (Miss. 1997) (holding that decisions on constructive possession must establish that when contraband is found on premises, there must be evidence, in addition to physical proximity, showing that the defendant consciously exercised control over the contraband, and absent this evidence, a finding of constructive possession cannot be sustained). The evidence is insufficient to prove that Thomas consciously exercised control over the contraband. Suspicion does not meet that burden. In *Jones*, our Supreme Court reversed and rendered Jones' conviction, finding that nothing connected him to marijuana found in a jacket in the backseat of his friend's car. *Id.* at 377. The facts outlined in that case were also that Jones' friend denied knowledge of the marijuana and did not know of any connection between Jones and the narcotic in the backseat. *Id.*

¶24.     In light of this context, I would find that the facts do not support a finding of constructive possession. Therefore, I respectfully dissent in part.

**McDONALD, J., JOINS THIS OPINION IN PART.**